(No. 47233.—

BEN GENAUST, Appellant, v. ILLINOIS POWER COMPANY *et al.,* Appellees.

*Opinion filed Jan. 20, 1976.—Rehearing denied March 25, 1976.*

CREBS, J., took no part.

John E. Norton, of Belleville (Edward J. Kionke, of counsel), for appellant.

Carl W. Lee, of Gundlach, Lee, Eggmann, Boyle & Roessler, of Belleville, for appellee Illinois Power Co.

Gordon R. Broom, of Burroughs, Simpson & Wilson, of Edwardsville, for appellee Hy-Gain Electronics Corp.

John F. O'Connell, of O'Connell & Waller, of Belleville, for appellee Rohn Tower Manufacturing Co.

Allen D. Churchill, of Dunham, Boman, Leskera & Churchill, of East St. Louis, for appellee Lurtz Electric Co.

William B. Wham, of Wham & Wham, of Centralia, for appellee Hubert Plumbing & Heating Co.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

This appeal involves a suit to recover for personal injuries suffered by plaintiff, Ben Genaust. The six counts of his second amended complaint (hereafter complaint) were predicated upon negligence and strict liability in tort. The circuit court of St. Clair County entered an order dismissing five of the six counts of the complaint for failure to state a cause of action. The circuit court also made an express finding that there existed no just reason for delaying enforcement or appeal of this order. (Ill. Rev. Stat. 1973, ch. 110A, par. 304(a).) On appeal to the appellate court, the judgment of the circuit court was affirmed (*Genaust v. Illinois Power Co.* (1974), 23 Ill. App. 3d 1023), and we granted leave to appeal in which plaintiff contests the correctness of the appellate court judgment.

Since this cause comes before us on the pleadings, all facts well pleaded will be accepted as true. (*Gertz v. Campbell* (1973), 55 Ill.2d 84, 87.) The complaint alleges that on or before March 3, 1969, plaintiff entered into an oral contract with Hubert Plumbing and Heating Company, Inc. (hereinafter Hubert), whereby he agreed to furnish and install a citizens band antenna on Hubert's premises in Belleville, Illinois. Pursuant to this contract, plaintiff purchased a galvanized steel tower and antenna from the Lurtz Electric Company, Inc. (hereinafter Lurtz). The tower was manufactured by the Rohn Tower Manufacturing Company (hereinafter Rohn), and the antenna, by the Hy-Gain Electronics Corporation (hereinafter Hy-Gain). While installing the tower and antenna, the antenna "came close to, but did not touch" certain "uninsulated power wires" which were owned and maintained by the Illinois Power Company (hereinafter Illinois Power), and passed close to the boundary of Hubert's property. An electric current arced from the power wires to the antenna, passed through the tower, and struck the

plaintiff, causing him serious injury.

Count I of plaintiff's complaint was premised on negligence and was directed against Illinois Power. It charged that Illinois Power was negligent in that it failed to properly and sufficiently insulate its power wires, that it failed to locate the wires at such a distance above the ground so as not to constitute a danger to persons installing antennas, and that it failed to warn persons who might be installing antennas of the danger of an electrical shock if metal objects were brought in close proximity to the power wires. This count was not dismissed by the circuit court, and it is not involved in this appeal.

Count II was also against Illinois Power, but it was predicated upon strict liability in tort. It alleged that Illinois Power was in the business of manufacturing and selling electricity to the general public and that, as a part of the system by which it sold and distributed the electricity, it owned and maintained certain power wires which passed close to the building on Hubert's premises. This count charged that the electricity was in an unreasonably dangerous condition because Illinois Power had not sufficiently insulated the wires, had placed the wires too close to the ground, and had not warned of the danger of an electrical shock if a metal object was brought in close proximity to the wires.

Counts III, IV and V were directed against Hy-Gain, Rohn and Lurtz respectively. These three counts were also based upon strict liability in tort. The counts alleged that at the time the tower and antenna left the defendants' possession and control these devices were in an unreasonably dangerous condition because the devices did not have adequate warnings or labels informing plaintiff of the dangers of using, installing or bringing the products in close proximity to power wires which could cause an electrical spark to be arced to them from the wires if brought within a certain distance.

The final count (count VI) of the complaint was

against Hubert. It alleged that Hubert knew or should have known in the exercise of reasonable care that power wires passed in close proximity to the building on its premises and that the wires were not properly or sufficiently insulated. Notwithstanding this duty, plaintiff asserted that Hubert negligently failed to warn him that the wires were dangerous, ordered construction of the antenna dangerously close to the wires, and failed to provide the plaintiff with a safe place to work.

Prefatory to our resolution of the issues raised it is necessary to rule upon two motions filed with this court and held for consideration with this case. Illinois Power has filed a motion to strike that portion of plaintiff's brief pertaining to count II because plaintiff's petition for leave to appeal did not challenge the correctness of the appellate court opinion in relation thereto. We conclude that authority exists for consideration of this matter, and said motion will be denied. *Schatz v. Abbott Laboratories, Inc.* (1972), 51 Ill.2d 143, 145.

Plaintiff has also submitted a motion to amend his complaint to allege additional facts in regard to counts III through VI. In order to amend pleadings in reviewing courts, Supreme Court Rule 362 requires that the movant "must show the amendment to be necessary, [and] that no prejudice will result to the adverse party if the amendment sought is permitted ***." (Ill. Rev. Stat. 1973, ch. 110A, par. 362(b).) Considering plaintiff's motion and the objections filed thereto by Rohn, we find that plaintiff has failed to meet the requirements of Rule 362, and the motion is therefore denied.

Plaintiff maintains that the allegations of count II state a cause of action on the basis of strict liability in tort as announced in *Suvada v. White Motor Co.* (1965), 32 Ill.2d 612. In *Suvada* this court adopted the doctrine of strict liability which coincided with the view expressed in the Restatement (Second) of Torts, section 402A (1965). That section provided:

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if .

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

In *Winnett v. Winnett* (1974), 57 Ill.2d 7, 11, we expanded the protection afforded to users and consumers by the doctrine of strict liability to those who, in a general sense, are referred to as "innocent bystanders," or, more properly, as "those individuals to whom injury from a defective product may reasonably be foreseen."

Plaintiff argues that the electricity sold by Illinois Power was a "product" and that the wires carrying the electricity were the "packaging," which was an integral part of the marketing system of this "product." He alleged that the absence of insulation or the deteriorating condition of the insulation on the wires rendered the "product" defective. This defect, he contends, made the electricity unreasonably dangerous at the time it left the control of its manufacturer, Illinois Power. Plaintiff points out that comment *h* to section 402A, Restatement (Second) of Torts, provides that a product may be in an unreasonably dangerous condition as a result of a defect in its packaging or container.

Assuming, *arguendo,* that electricity is a "product," it does not logically follow that the wires are its "packaging." A package is. "a covering wrapper or container; a protective unit for storing or shipping a commodity."

(Webster's Third New International Dictionary 1617 (1961).) It cannot be held that wires, which are the instrument used to transmit electrical energy, fall within this definition. To accept plaintiff's contention that the power wires were the "packaging" for electricity would require an expanded definition of the word "package" in the context of strict liability beyond its common and ordinarily understood meaning. Even if plaintiff's contention were accepted, the doctrine of strict liability would still not be applicable. The power wires were not sold to any consumer, but were owned and controlled by Illinois Power. The only "product" that was in the process of being sold was the electricity itself, and plaintiff does not contend there was any defect in the electricity. The fact that the wires may have been located too close to the ground does not allege any defect in the wires or the electricity.

Moreover, while the second amended complaint refers to the electrical wires as "power wires," the original complaint referred to them as "high power lines." Throughout his brief and during oral argument, plaintiff indicated repeatedly that these wires carried "high voltage electricity." He specifically stated in his brief that the electricity in the wires was being transmitted in "bulk." In *Suvada,* this court held that a person seeking recovery under strict liability must prove that the unreasonably dangerous condition existed at the time the product left the manufacturer's control. (32 Ill.2d 612, 623.) Section 402A of the Restatement (Second) sets forth this requirement in terms of the product reaching the consumer or user in the condition in which it was sold. In the present case plaintiff's own averments disclose that the electricity was not in the condition in which it was to be sold. Plaintiff does not dispute that electrical energy, transmitted at high voltage, must be changed by the use of various transformers and other electrical devices to a form which a consumer can use in his home or factory. It is obvious that

the high-voltage electricity in question remained in the control of Illinois Power and was neither delivered nor sold to any consumer.

The doctrine of strict liability was not intended to encompass injuries resulting from a "product" which is in an unmarketable state and which had not yet been released into the stream of commerce by sale or display to the consumer. It is unnecessary to decide, therefore, whether the failure to warn caused the electricity to be in an unreasonably dangerous condition under strict liability. Accordingly, as a matter of law, count II of the complaint fails to state a cause of action on the basis of strict liability. We note that other jurisdictions have considered and rejected the applicability of strict liability to injuries sustained from electricity under similar circumstances. *Kemp v. Wisconsin Electric Power Co.* (1969), 44 Wis.2d 571, 172 N.W.2d 161; *Wood v. Public Service Co.* (1974), 114 N.H. 182, 317 A.2d 576; *Erwin v. Guadalupe Valley Electric Co-op* (Tex. Civ. App. 1974), 505 S.W.2d 353.

Plaintiff's basis for maintaining that counts III, IV and V state a cause of action under strict liability is predicated on the theory that the tower and the antenna were products which were unreasonably dangerous because they failed to have adequate warnings or labels attached informing users of the danger of electrical arcing if either of the products were brought in close proximity to power wires. He contends that the failure to warn of the possible danger is sufficient to constitute an unreasonably dangerous condition without the need to allege a specific defect in the design or construction of the product. While there is no dispute that contacting electrical wires poses a known danger, plaintiff maintains that it is not common knowledge that electricity can arc if a metal object is brought into close proximity with an uninsulated electrical transmission wire. He suggests this type of wire is used extensively in modern urban areas where many outside antennas are installed at heights equaling or exceeding the

height of such wires thereby giving rise to a duty to warn of the danger of electrical arcing.

The determination of whether a duty to warn exists is a question of law and not of fact. (See *Fanning v. LeMay* (1967), 38 Ill.2d 209; *Mieher v. Brown* (1973), 54 Ill.2d 539, 541.) Underlying such a determination is necessarily the question of foreseeability (see 72 C.J.S. *Products Liability*, sec. 26 (1975 Supp.)), which, in the context of determining the existence of a duty, is for the court to resolve. "A foreseeability test, however, is not intended to bring within the scope of the defendant's liability every injury that might possibly occur. 'In a sense, in retrospect almost nothing is entirely unforeseeable.' [Citation.] Foreseeability means that which it is *objectively reasonable* to expect, not merely what might conceivably occur." (Emphasis in original.) *Winnett v. Winnett* (1974), 57 Ill.2d 7, 12-13.

Reviewing the facts alleged in the complaint, we do not find it was objectively reasonable for Hy-Gain, Rohn and Lurtz to expect a user of their products to be injured in the manner in which plaintiff was injured. As plaintiff admits, the danger of electricity is common knowledge. Moreover, it is common knowledge that metal will conduct electricity. Accordingly, it is not objectively reasonable to expect that a person, knowing the danger of electricity if metal should contact electrical wires, would attempt to install a metal tower and antenna in such close proximity to electrical wires. The fact that plaintiff's injury was the result of electricity arcing to the tower or the antenna rather than from actual contact with the wires is not controlling. The controlling fact is that it was not reasonably foreseeable a user would install the products in such proximity to electrical wires when the harsh consequences of the slightest mishap, which would cause the metal to contact the wires, are so obvious.

Moreover, we find that the doctrine of strict liability is not applicable to the facts plaintiff has alleged. In

*Fanning v. LeMay* (1967), 38 Ill.2d 209, an action for personal injuries was brought against the manufacturer and retailer of a pair of shoes by a purchaser who had been injured when she slipped on a wet floor. The complaint alleged, among other charges, that these defendants had failed to warn purchasers that the shoes were dangerous to wear when they were wet. This court affirmed the dismissal of the complaint against the manufacturer and retailer. We noted that almost all shoes have a tendency to become slippery when wet, and found that in common articles such as shoes the law did not require a manufacturer to warn against injuries resulting from their common propensity. Similarly, in the present case, while a radio tower and antenna are not articles as ordinary as a pair of shoes, it is known that metal commonly has the propensity to conduct electricity. Although comment *j* to section 402A of the Restatement (Second) of Torts recognizes that a failure to warn can make a product unreasonably dangerous, we conclude that a duty to warn is not required where the product is not defectively designed or manufactured, and where the possibility of injury results from a common propensity of the product which is open and obvious. Since the facts alleged in counts III, IV and V demonstrate on their face that plaintiff would never be entitled to recover under strict liability, these counts were properly dismissed. *Burke v. Sky Climber, Inc.* (1974), 57 Ill.2d 542, 545.

Plaintiff argues that count VI alleges a sufficient cause of action based upon the duty of the party in possession of premises to exercise ordinary care for the safety of a business invitee who comes on the premises at the possessor's invitation. In this regard plaintiff contends that Hubert negligently failed to warn him of the uninsulated condition of the power wires, ordered construction of the tower and the antenna too close to the wires, and failed to provide a safe place to work. He specifically argues that Hubert permitted the danger of electricity arcing from

uninsulated, high-voltage wires to a metal tower and antenna to remain concealed. In support of his argument, he maintains Hubert had actual or constructive knowledge that the power wires passed in close proximity to its premises and that the wires were uninsulated.

The Restatement (Second) of Torts, section 343, correctly states the settled law regarding the liability of possessors of land to invitees. (See also *Geraghty v. Burr Oak Lanes, Inc.* (1955), 5 Ill.2d 153, 157; *Blue v. St. Clair Country Club* (1955), 7 Ill.2d 359, 363; *Nowicki v. Union Starch and Refining Co.* (1973), 54 Ill.2d 93, 98; *Fancil v. Q.S.E. Foods, Inc.* (1975), 60 Ill.2d 552, 557.) It provides:

> "A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger."

The basis of the various allegations set forth in count VI rests upon the theory that Hubert failed to act affirmatively to ensure plaintiff's safety in regard to the danger of electrical arcing. Considering this theory under the rule expressed by section 343, we find, as a matter of law, that count VI fails to state a cause of action in negligence. A possessor of land owes an invitee a duty of exercising reasonable care to discover dangerous conditions on his land. We believe that in the exercise of reasonable care Hubert could not have discovered the danger of electrical arcing that existed by the presence of the power wires *which were neither on its property nor under its control.* Moreover, the liability of a possessor of land is

also predicated upon his failure to expect that the invitee will not discover or realize the danger. While plaintiff argues to the contrary, his own averments in count VI disclose that he contracted with Hubert to furnish and install this equipment, and thereby represented that he had sufficient knowledge to competently and safely perform the task. It logically follows, therefore, that had Hubert considered the presence of the wires, there was no basis for it to expect the plaintiff would not realize the dangers inherent in the installation of a metal tower and antenna in close proximity to power wires.

Furthermore, we note that count VI fails to allege that the wires in question were either hidden or concealed. As it is common knowledge that electricity is dangerous, so is it also common knowledge that any line or wire carrying electricity is dangerous. The potential risk of installing metal equipment in close proximity to power wires is apparent. A business invitee has a responsibility for his own safety and must be held to be equally aware of all the obvious and normal hazards incident to the premises as the possessor of the land.

Accordingly, the judgment of the appellate court sustaining the dismissal of counts II through VI is affirmed.

*Judgment affirmed.*

MR. JUSTICE UNDERWOOD took no part in the consideration or decision pertaining to counts I and II of the complaint involved in this case.

MR. JUSTICE CREBS took no part in the consideration or decision of this case.