Richard F. HARMS, Plaintiff,

v.

BELL HELICOPTER TEXTRON, a DIVISION OF TEXTRON, INC., a foreign corporation; Textron, Inc., a foreign corporation; Avco Lycoming, a division of Avco Corporation; and Avco Corporation, a foreign corporation, Defendants.

No. 78 C 3895.

United States District Court, N.D. Illinois, E.D.

Dec. 16, 1982.

Affirmed, 7 Cir., 714 F.2d 149.

Robert M. Salzman, Edward Janski of Pfeffer, Becker, Gabric & Cerveny, Ltd., Chicago, Ill., for plaintiff.

John W. Bell of Johnson, Cusack & Bell, Ltd., Chicago, Ill., for defendants.

## MEMORANDUM OPINION

KOCORAS, District Judge:

On September 10, 1976, the plaintiff, Richard F. Harms, was injured in an accident while working as a civilian employee of the United States Army at Fort Sheridan, Illinois. The plaintiff had been a mechanic since the 1940's and had been employed by the army in a related capacity since 1960. At the time of the accident, the plaintiff was a Senior Mobile Heavy Equipment Inspector. The accident occurred as the plaintiff was load testing an aircraft clevis assembly which was designed, manufactured, and distributed by the defendants.

A clevis assembly of the type involved in this case is a device that is attached to inoperative helicopters in order to facilitate lifting of the aircraft. The clevis assembly involved here had a "weight capacity" of 10,000 pounds and was "proof loaded" to 25,000 pounds. The purpose of load testing the clevis assembly is to ensure that it will actually support in a safe manner the load which the specifications say it will support. To do this, it is necessary to apply a load of 10,000 pounds on the clevis assembly.

In his position as a senior inspector, the plaintiff developed what he thought was an appropriate method of exerting a 10,000 pound load on the clevis assembly. The plaintiff's method worked as follows. The clevis assembly was positioned between a dynamometer and a pneumatic jack. The clevis assembly was then fastened to the dynamometer at one end and the jack at the other end by coupling devices called "shackles." Then, as the jack pulled on one end of the clevis assembly, the dynamometer measured the amount of force being exerted.

On the day of the accident, the plaintiff selected a number of shackles to use in his testing procedure. He did not know the load capacity which these shackles were designed to withstand, and he made no effort to determine their capacity before performing the test. As the test progressed to the point where the jack was applying 9,000 pounds of force on the clevis assembly, one of the shackles between the clevis and the dynamometer failed. This sudden release of force apparently caused the jack to rebound in such a way that it struck the plaintiff, knocking him against a workbench and to the floor.

The clevis assembly itself did not break or fail in any way. The only part which broke under 9,000 pounds of force was the shackle which the plaintiff himself had selected for use in his testing procedure. A subsequent investigation by the army revealed that the shackle which had failed when the plaintiff subjected it to 9,000 pounds of force was designed to withstand a load of only 2,000 pounds. The shackle

was not made or supplied by the defendants. It had nothing at all to do with the clevis assembly. It was simply a device which the plaintiff decided to use in his effort to apply 10,000 pounds of force on the clevis assembly.

In this lawsuit, the plaintiff seeks to recover for his injuries from the companies that designed, manufactured, and distributed the clevis assembly. These companies are Bell Helicopter Textron and its parent company, Textron Incorporated—makers of the helicopter for which the clevis assembly was used—and Avco Lycoming and its parent company, Avco Corporation—makers of the turbine engine used in the helicopter made by the Textron defendants. The lawsuit was originally brought in the Circuit Court of Cook County, Illinois and was removed to this court by the defendants on the basis of diversity jurisdiction.

The case against the defendant companies is grounded on strict products liability. According to the plaintiff's theory, the clevis assembly was in a defective condition unreasonably dangerous to him and this defective condition caused his injuries. The clevis assembly is said to be unreasonably dangerous in essentially two respects. First, it is alleged that the assembly was defectively designed and manufactured in such a way that it could not safely be load tested. Second, it is alleged that the assembly was unreasonably dangerous because the manufacturer failed to give users of the device adequate warnings or instructions regarding the dangers which might arise in connection with load testing it.

The matter now before the court is the motion of Bell Helicopter Textron and Textron Incorporated for summary judgment. Judge McGarr denied a similar motion by these defendants almost three years ago, on February 28, 1980, and these defendants have now renewed their motion, in effect asking this court to reconsider Judge McGarr's earlier order.

In *Suvada v. White Motor Company*, 32 Ill.2d 612, 210 N.E.2d 182 (1965), the Illinois Supreme Court adopted the doctrine of strict liability in tort which coincided with the view expressed in section 402A of the Restatement (Second) of Torts. Under these principles of strict liability, the plaintiff has first alleged that the clevis assembly was unreasonably dangerous in that its design and manufacture precluded safe load testing.

The evidence presented by the parties on this motion, however, in no way supports this allegation. In his deposition testimony, the plaintiff himself admitted that he had safely tested the clevis assembly on at least one, and perhaps two, occasions prior to the date of the accident. The defendants' expert witness testified that various methods existed for safely applying the requisite test load on the clevis assembly. Even the plaintiff's own expert testified that the clevis assembly, as it was designed, could be load tested with an appropriate "yoke type fixture" that would be compatible with a "standard tensile testing machine." This expert also said that if he did not happen to possess such a fixture, he could design and make one in no more than half a day. In addition, J.C. Sanders, the plaintiff's immediate supervisor at Fort Sheridan, explained in his deposition testimony that such a fixture was in fact fabricated out of strong steel after the plaintiff's accident, which permitted load testing of the clevis assembly as it was designed.

In the face of all of this evidence indicating that it is entirely possible to test the clevis assembly with safety if proper testing equipment is used, the plaintiff has offered nothing which supports a contrary conclusion. Thus, there is no genuine issue of material fact regarding the design of the clevis assembly as it relates to safe load testing. The plaintiff's expert suggested that there may be different designs which could be load tested more easily, but the evidence is uncontradicted that the existing design, which is at issue in this case, can be load tested in a completely safe manner with appropriate equipment. Accordingly, summary judgment for the defendants is proper on plaintiff's claim insofar as it is based on an allegation that the clevis as-

sembly was defectively designed and manufactured.

█ The plaintiff also asserts that the clevis assembly was unreasonably dangerous because the manufacturer failed to give adequate warnings and instructions regarding the correct method of load testing the device. The Illinois Supreme Court has recognized that in some circumstances a failure to warn of a product's dangerous propensities may serve as the basis for holding a manufacturer or seller strictly liable in tort. In such cases, the product is in a defective condition unreasonably dangerous not because of some defect inherent in the product itself, but because of the absence of an adequate warning accompanying the product. *E.g.*, *Woodill v. Parke Davis & Company*, 79 Ill.2d 26, 37 Ill.Dec. 304, 402 N.E.2d 194 (1980).

The determination of whether a duty to warn exists is a question of law and not of fact. *Genaust v. Illinois Power Company*, 62 Ill.2d 456, 466, 343 N.E.2d 465, 471 (1976). Underlying such a determination is necessarily the question of foreseeability, which, in the context of determining the existence of a duty, is for the court to resolve. *Id.* A foreseeability test, however, is not intended to bring within the scope of the defendant's liability every injury that might possibly occur. In a sense, in retrospect, almost nothing is entirely unforeseeable. Foreseeability in these cases means that which it is objectively reasonable to expect, not merely what might conceivably occur. *Id.*

*Genaust* is one of the Illinois Supreme Court's leading cases on the manufacturer's duty to warn in the context of products liability actions. In *Genaust*, the plaintiff brought a metal tower and antenna he was installing into close proximity to overhead power wires. An electric current arced from the wires to the antenna, was conducted through the metal tower, and struck the plaintiff, causing serious injuries. The plaintiff brought a strict liability action against the makers of both the antenna and the tower, as well as the company that sold both products to him, alleging that the products were unreasonably dangerous be-cause they lacked adequate warnings or labels informing him of the dangers of using or installing them close to overhead power wires. Affirming the lower court's dismissal of the strict liability counts based on the failure to warn, the Illinois Supreme Court stated:

Reviewing the facts alleged in the complaint, we do not find it was objectively reasonable for Hy-Gain, Rohn and Lurtz to expect a user of their products to be injured in the manner in which plaintiff was injured. As plaintiff admits, the danger of electricity is common knowledge. Moreover, it is common knowledge that metal will conduct electricity. Accordingly, it is not objectively reasonable to expect that a person, knowing the danger of electricity if metal should contact electrical wires, would attempt to install a metal tower and antenna in such close proximity to electrical wires. The fact that plaintiff's injury was the result of electricity arcing to the tower or the antenna rather than from actual contact with the wires is not controlling. The controlling fact is that it was not reasonably foreseeable a user would install the products in such proximity to electrical wires when the harsh consequences of the slightest mishap, which would cause the metal to contact the wires, are so obvious.

62 Ill.2d at 466, 343 N.E.2d at 471.

█ The court then went on to declare that the doctrine of strict liability was not even applicable in such a case, where the danger was so obvious. As the court stated, "[A] duty to warn is not required where the product is not defectively designed or manufactured, and where the possibility of injury results from a common propensity of the product which is open and obvious." 62 Ill.2d at 467, 343 N.E.2d at 471.

It is clear that these principles are fully applicable to the instant case. To load test the clevis assembly, it was necessary to apply 10,000 pounds of force to it. Just as it is common knowledge that metal will conduct electricity or that shoes will slip when worn on a wet floor, *see Fanning v. LeMay*, 38 Ill.2d 209, 230 N.E.2d 182 (1967),

so is it common knowledge that one cannot safely exert five tons of pull with a linkage that will only hold one ton. Even without taking into account the plaintiff's long experience as a mechanic, common sense dictates that if he intended to exert 10,000 pounds of force on the clevis assembly, he should have used a shackle capable of withstanding a like amount of force. The plaintiff's expert admitted that this is a matter of common sense. Surely plaintiff would not attempt to tow an automobile with a piece of old clothesline and then, when the line broke, sue the automaker for failing to warn him that he should have used a cable or a chain to tow a car. This lawsuit, as it relates to the makers of the clevis assembly, is really the same situation.

■ Where there is an obvious danger, it would be pointless to require a manufacturer to warn against injuries resulting from that patent threat. This established principle was particularly well put by the Supreme Court of Pennsylvania in an analogous strict liability case involving section 402A of the Restatement (Second) of Torts. In that case, a factory worker had been injured when he stuck his hand into a machine that was breaking sheets of glass because he thought a piece of glass had jammed and was damaging the machine. In concluding that there was no merit to the injured worker's contention that he had not been properly warned or instructed as to how to operate the machine, the court stated:

> Here [the plaintiff] voluntarily did exactly what obviously was dangerous—reached into an operating glass breaking machine. [The plaintiff] testified that he reached into the machine because he thought the machine was being damaged. If he thought the machine was being damaged, what did he think would happen to his hand?
>
> . . . .
>
> [W]e hardly believe it is anymore necessary to tell an experienced factory worker that he should not put his hand into a machine that is at that moment breaking glass than it would be necessary to tell a zookeeper to keep his head out of a hippopotamus' mouth.

*Bartkewich v. Billinger*, 432 Pa. 351, 356, 247 A.2d 603, 606 (1968).[1]

On the facts of this case, as disclosed by the pleadings and other materials submitted, it can only be concluded that the danger of testing the clevis assembly with 10,000 pounds of force by using a shackle with a lesser capacity should have been obvious to the plaintiff. Simple common sense, especially when combined with the plaintiff's long experience as a skilled mechanic, was enough to alert him that he had a responsibility to select safe testing equipment.[2] No explicit warning was required

1. This motion has been decided on the basis of the substantive law of Illinois. *See Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). However, Pennsylvania, like Illinois, follows the doctrine of strict liability in tort as expressed in section 402A of the Restatement (Second) of Torts. Thus, it is not inappropriate, in deciding an issue governed by the strict liability principles adopted by the Illinois courts, to quote a Pennsylvania court's particularly apt expression of a general rule applicable to all strict liability actions.

2. After this court issued an oral ruling on this motion in open court on December 6, 1982, stating that a written opinion would soon follow, plaintiff's counsel protested that the court had failed to consider evidence that some of the plaintiff's colleagues in the "tool crib," had thought prior to the accident that the shackle which had broken had a capacity of 20,000 pounds rather than the actual capacity of 2,000 pounds. Plaintiff's counsel apparently reasons that this incorrect information regarding the capacity of the shackle creates a genuine issue of material fact which precludes summary judgment.

Judge McGarr's previous denial of the defendants' motion for summary judgment was based on his view that at that time there remained some question as to the actual capacity of the shackle. This court is satisfied, after a thorough review of the evidence, including the affidavit of J.C. Sanders and the army accident report attached thereto, which apparently were not before Judge McGarr, that it is now uncontroverted that the shackle in question actually had a capacity of only 2,000 pounds.

In any event, the fact that the "tool crib" personnel may have thought that the shackle had a capacity of 20,000 pounds in no way injects a genuine issue of material fact into this case on the question of the defendants' duty to

to tell him that he should have used shackles or other devices which were adequate to the task he had set for them. Accordingly, since the makers of the clevis assembly had no duty to warn of this obvious danger, as a matter of law, the product is not unreasonably dangerous for failing to be accompanied by such warnings or instructions. That being so, summary judgment for the defendants is appropriate insofar as the plaintiff bases his claim against them on their failure to warn or instruct him regarding testing of the clevis.

For the foregoing reasons, the motion of defendants Bell Helicopter Textron and Textron Incorporated for summary judgment is granted. And, since Avco Lycoming and Avco Corporation are named as defendants in this action solely on the basis of the role they played in the design and distribution of the clevis assembly, summary judgment is also granted as to them.

warn the plaintiff of the dangers of load testing the clevis assembly with inadequate equipment. Had the plaintiff checked with the "tool crib" staff prior to using the shackle (something he admits he did not do), and had he been told by them that the shackle had a capacity of 20,000 pounds, no conceivable warning by the makers of the clevis assembly would have cured his erroneous perception of the shackle's capacity. The plaintiff would have been injured in such a case because of his reliance on misinformation supplied by his fellow employees, not because he had not been admonished to test the assembly in a safe manner. Under such circumstances, the plaintiff would have believed that he was acting safely, and a further warning to do so stamped on the clevis assembly would have been superfluous.