THOMAS CHUHAK, Adm'r of the Estate of Jack Ciernicki, Deceased, Plaintiff-Appellant, v. BOGDAN KROL, Indiv. and d/b/a Columbia Trailer and Truck Repair, *et al.*, Defendants-Appellees.

First District (3rd Division) No. 1—91—1656

Opinion filed December 22, 1993.—Rehearing denied February 9, 1994.

Carr & O'Rourke Associates, of Chicago (Glenn J. Jazwiec, of counsel), for appellant.

Schaffenegger, Watson & Peterson, Ltd., of Chicago (John Piegore and Michael A. Strom, of counsel), for appellees.

PRESIDING JUSTICE TULLY delivered the opinion of the court:

This case arises out of the fatal accident which occurred when decedent, Jack Ciernicki, was performing repairs on a truck trailer which collapsed on him. Plaintiff filed suit against six defendants for the fatal injuries suffered by plaintiff's decedent. The trial court entered summary judgment in favor of defendant Highland Super-stores (Highland) on the basis that Highland owed no duty to warn or protect decedent Ciernicki from the danger of a collapsing trailer. On appeal, plaintiff argues that the defective trailer which collapsed on the decedent was a dangerous condition which was known to the owner, Highland, but was concealed from decedent, who could not have known that the trailer was fully loaded when he began to repair it.

The owner-lessor of the trailer at issue was defendant, Gelco-Tip Trailer Leasing Co. (Gelco-Tip). The lessee-operator of the trailer was MPG Transport (MPG). Defendant Michael Wasacki is the president of MPG. Defendant James Bradbent was employed by MPG as a truck driver and was assigned to operate the truck tractor and trailer repaired by decedent. Bogdan Krol, individually and d/b/a Columbia Trailer and Truck Repair, was decedent's immediate employer. Highland is a retail merchant and shipper of goods. MPG provided vehicles and drivers for the transportation of Highland's goods and MPG was responsible for the repairs and maintenance of any vehicle used by MPG in the shipment of Highland's goods.

The trailer at issue was leased by MPG from Gelco Tip. The lease agreement required Gelco Tip to perform necessary repair and maintenance on all trailers, in the event of mechanical problems. The general custom and practice was that after Highland requested a trailer, MPG would haul a trailer to Highland's dock, whereupon Highland would load the trailer and tender it to MPG for delivery.

On the date in question, the trailer was loaded with Highland's goods and tendered to MPG for delivery. However, the trailer could not be delivered due to problems with the landing gear. MPG then contacted Gelco Tip to repair the trailer. Gelco Tip then hired Bogdan Krol, an experienced trailer mechanic, to repair the trailer. Bogdan Krol had met the decedent in Poland, where the decedent had attended trade school for truck and trailer repairs. At the time of the occurrence, decedent was an experienced trailer mechanic and had been employed by Bogdan Krol for 10 months.

On the date of the accident, John from Gelco Tip directed Krol to go to MPG, where they were having problems with the landing gear of a trailer. According to Krol, John from Gelco Tip informed Krol that the trailer was empty. Krol testified that it was important for him to know whether a trailer was loaded since a loaded trailer must be supported by a truck tractor, whereas an empty trailer can be supported by jack stands. Krol testified that had he known the trailer was loaded, he would have used a truck tractor for support. According to Krol, Gelco Tip always contacted the customers to ascertain whether the trailers were loaded before sending repairmen.

When Krol and decedent Ciernicki arrived on the scene, an MPG employee showed them the trailer to be repaired and allegedly screamed at them for being late. Krol never asked anyone from MPG if the trailer was loaded and he never spoke to anyone from Highland. Bradbent, an MPG senior employee, conversed with Krol and decedent when they arrived; he knew that the trailer was loaded but did not tell them. Bradbent watched decedent place two jack stands under the trailer for support. Bradbent was sitting in the truck tractor at the time of the occurrence. Bradbent said that the two men could not have known whether the trailer was loaded or not.

Bradbent testified that he did not know whether the jackstands were sufficient support for the trailer. The trailer was backed up against Highland's warehouse, such that Krol could not discern whether the trailer was loaded from outside the warehouse. Highland's warehouse manager, William Lewis, observed Krol and Ciernicki making the repairs on the trailer. He had no contact with the repairmen and trusted they knew what they were doing. Krol and Ciernicki were almost finished when the accident occurred. Krol

heard a loud noise when the trailer collapsed and he saw Ciernicki under the trailer. Krol testified that the trailer collapsed because it was "overloaded."

We now consider whether defendants owed a duty to decedent to warn him about the condition of the loaded trailer prior to making the requested repairs. Factors relevant in determining whether a duty exists include: the foreseeability of the injury, the likelihood of the injury, the magnitude of the burden of guarding against the injury, the consequences of placing that burden on the defendant and the seriousness of the injury. *Ward v. K mart Corp.* (1990), 136 Ill. 2d 132, 145-46.

The purpose of summary judgment is not to try an issue of fact but to determine whether a triable issue of fact exists. (*Miller v. Smith* (1985), 137 Ill. App. 3d 192.) Summary judgment is a drastic remedy which should not be granted unless the movant's right to such relief is clear and free from doubt.

■ A possessor of land may be held liable for physical harm to his invitees caused by a condition on the land if he: (1) knows or by exercise of reasonable care should discover the condition and should realize that it involves an unreasonable risk of harm to such invitees; (2) should expect that they will not discover or realize the danger, or will fail to protect themselves against it; and (3) fails to exercise reasonable care to protect them against the danger. *Haberer v. Village of Sauget* (1987), 158 Ill. App. 3d 313; *Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456. See also Restatement (Second) of Torts, § 343 (1965).

In *Deibert v. Bauer Brothers Construction Co.* (1990), 141 Ill. 2d 430, 566 N.E.2d 239, the Illinois Supreme Court clarified the duty of a landowner to keep his premises in a reasonably safe condition for the safety of his invitees. In *Deibert*, the plaintiff construction worker stepped out of a portable bathroom on defendant's property and looked up to see if any debris was being thrown down from the nearby balcony. During this momentary distraction, plaintiff fell into one of the many tire ruts which were located directly in front of the bathroom. The rut was an open and obvious danger and was not concealed in any way. However, defendant created the hazard by placing the bathroom near the ruts. Moreover, defendant was aware of the tendency of the workers to throw debris off a balcony near the bathroom. Thus, it was foreseeable that plaintiff would become momentarily distracted and fall into one of the ruts. The court concluded that the foreseeability of plaintiff's injury, the likelihood of his injury and the magnitude of the burden placed upon defendant in placing his bathrooms in another location all served to impose a legal duty upon defendant to use reasonable care in eliminating the ruts or choosing a safer location for its bathrooms.

■ Similarly, in the instant case, defendant Highland entirely controlled the loading operation of the trailer in question. Highland was aware of the condition of the trailer and the need for its repair, yet it did not bother to unload the trailer or ensure that a tractor would be placed beneath it for support. Moreover, Highland knew or should have known of the likelihood that the repairmen would not know the trailer was loaded, as it was backed all the way up against the warehouse. Finally, it was foreseeable that the repairmen would be distracted from ascertaining the condition of the trailer due to the screaming at the repairmen to rush the job when they arrived on the scene. The magnitude of the burden placed upon Highland is quite small in that Highland could have quite easily unloaded the truck, placed the tractor beneath the truck or simply warned MPG or the repairmen that the trailer was loaded and in danger of collapsing without proper support.

Based upon all of the surrounding facts and circumstances in this case, not to mention the seriousness of the injury, we find that there existed a duty to warn decedent of the hidden and dangerous condition of the trailer, which prior to repair was under the complete control of Highland. The fact that the danger of the loaded truck may have been an obvious risk to decedent does not affect the basic duty of defendant, though it may present questions of fact as to contributory negligence and assumption of risk.

The mere existence of a duty does not impose *per se* liability upon Highland for breach of that duty. Whether defendant actually breached its duty is a question of fact precluding summary judgment, to be resolved by the trier of fact. The jury must decide whether defendant failed to exercise reasonable care in protecting decedent from harm and whether such failure was the direct and proximate cause of decedent's death. Whether the presence of the loaded trailer, backed up to the warehouse, was sufficient in itself to warn decedent of the danger or whether additional precautions were needed are all matters to be resolved by the trier of fact.

For all of the foregoing reasons, the decision of the Cook County circuit court is hereby reversed and this case is remanded for proceedings consistent with this opinion.

Reversed and remanded.

RIZZI and GREIMAN, JJ., concur.