2019 IL App (1st) 181173

FIRST DIVISION
June 10, 2019

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

No. 1-18-1173

| | | |
|---|---|---|
| MICHAEL L. HEIDER, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 17 L 2330 |
| | ) | |
| DJG PIZZA, INC., d/b/a J.L.'S PIZZA & SPORTS BAR, | ) | Honorable |
| | ) | Patricia Sheahan |
| Defendant-Appellee. | ) | Judge Presiding. |
| | ) | |

PRESIDING JUSTICE MIKVA delivered the judgment of the court, with opinion.
Justices Pierce and Walker concurred in the judgment and opinion.

**OPINION**

¶ 1    While exiting the defendant's bar and restaurant the plaintiff in this case slipped and fell on a patch of wet concrete, suffering a broken leg that required multiple surgeries and that continues to cause him pain and limited mobility. The circuit court granted defendant's motion for summary judgment on plaintiff's negligence claim, concluding that plaintiff failed to present any evidence regarding how the floor in that area came to be wet or establishing that defendant had actual or constructive notice of a dangerous condition on its property. For the reasons that follow, we reverse.

¶ 2                                    I. BACKGROUND

¶ 3      Plaintiff Michael Heider fell on March 13, 2015, at J.L.'s Pizza & Sports Bar (JL's Pizza), a sports bar located in Palatine, Illinois. JL's Pizza has 5500 square feet of interior space and, at the time of the incident, had about 16 customer tables. JL's Pizza has only one main entrance, with an exterior door leading to a vestibule and an interior door leading to the bar and restaurant area. The floor of the bar by the interior door is cement painted with Epoxy.

¶ 4      David Gagner, the owner of JL's Pizza, testified at his deposition that a floor mat measuring approximately two feet by four feet with a carpeted top and nonskid rubber backing was positioned somewhere near the interior door on the day of Mr. Heider's accident,. Mr. Gagner did not purchase this mat; it was present when he purchased JL's Pizza, and he had not moved the mat prior to Mr. Heider's fall. Mr. Gagner explained that he had in fact purchased the business only one day before the incident, on March 12, and was the sole owner. He was not affiliated in any way with the prior establishment, which had operated for some time under another name, and had no prior experience running a bar or restaurant.

¶ 5      Mr. Gagner testified that, after the bar closed on March 12, the area near the mat was swept and vacuumed but not mopped. Mr. Gagner could not recall whether he had lifted the mat and inspected it prior to the incident. According to him, JL's Pizza had no written rules, regulations, policies, or work procedures regarding floor maintenance at the time of the incident.

¶ 6      Three employees were present at JL's Pizza on March 13: Mr. Gagner, a bartender, and a server. The bartender and server were employees of the previous management who continued working for a few days just to assist Mr. Gagner during the transition period. There were also approximately 50 customers present the day of the incident.

¶ 7      Mr. Heider testified at his deposition that on March 13, 2015, he was working as a school

bus driver and met some coworkers at JL's Pizza shortly after 3 p.m., when his shift ended that day. Two of those coworkers—Charles Brace and Richard Butterly—arrived at the bar shortly after Mr. Heider did and were also deposed in this case. All three testified that they had been to JL's Pizza on a few other occasions.

¶ 8    According to Mr. Gagner, Mr. Heider, Mr. Brace, and Mr. Butterly, the weather on March 13, 2015, was sunny and clear. Mr. Heider, Mr. Brace, and Mr. Butterly did not see any puddles as they walked up to the entrance of JL's Pizza. They did not notice the positioning of the floor mat or any dampness in the area. In fact, none of the three remembered if a mat was even there when he entered the bar.

¶ 9    Mr. Heider, Mr. Brace, and Mr. Butterly were seated together with their other coworkers at a table that, according to Mr. Heider and Mr. Butterly, was about 10 to12 feet from the entryway. Each of the men was able to see the entranceway from where he was seated, although Mr. Butterly did not have a direct view of the front door and Mr. Heider said he could see one corner of the door from where he was seated. Mr. Butterly was unable to recall whether Mr. Heider left the table at any point, but Mr. Brace stated that he never saw Mr. Heider get up from the table. Mr. Heider stated he only left the table when he decided to go home for the day, shortly after 5 p.m. This timing was corroborated by Mr. Butterly.

¶ 10    Mr. Heider testified that he did not observe any JL's Pizza employee mopping or cleaning the bar's entryway or inspecting it during the approximately 1 hour and 40 minutes that he was seated in the bar. He noticed some customers moving in and out of the bar but did not see anyone spill anything. Mr. Butterly and Mr. Brace testified that they also did not notice anyone spill anything or any employee of JL's Pizza mopping near the entryway.

¶ 11    Mr. Heider testified that he had two 12-ounce bottles of beer while he was at JL's Pizza

and had eaten a sandwich for lunch earlier that day. He stated that he was not intoxicated when he got up to go home. Mr. Gagner, Mr. Brace, and Mr. Butterly also testified that Mr. Heider did not appear to be intoxicated at any time.

¶ 12 According to Mr. Heider, it was still quite bright outside, and the lighting in the entryway was good when he stood up to go home. Mr. Heider could see the concrete floor of the entryway as he walked from the table to the door, and he was looking straight ahead as he walked out. He did not turn around to say good-bye to anyone. He did not look down at the floor. As Mr. Heider walked closer to the door, his right foot slid forward and his left foot slid back behind him. He stated that it was "kind of, like a splits *** I felt my back leg snap, and I went down." Mr. Heider was certain that he slipped on the cement floor and not on the mat. When he fell, he stated that his buttocks were on the mat and his legs were sticking directly across the doorway. Mr. Heider believes he slipped on water because when he landed on the floor he was wet and the floor, although there was no puddle, appeared damp. The mat was also wet. As he propped himself up on it, he had to keep wiping his hands on his jeans.

¶ 13 This was the first time Mr. Heider had noticed the mat. He said it was at an angle and only a corner of it was in front of the doorway. According to him, it looked as if someone or something had pushed the mat away from the doorway and "squeegeed" water onto the floor. Mr. Heider acknowledged that he just assumed this was the case and did not know for sure. Mr. Heider testified that he had not noticed any dampness when he first walked into JL's Pizza. He did not know how or when the water got on the floor. At first he thought it had been tracked in by customers because, as he stated, "it had to come from someplace," but he and the other witnesses all agreed it had not rained that day.

¶ 14 Mr. Butterly saw Mr. Heider fall. He said Mr. Heider was looking straight at the door as

he walked, and he did not see Mr. Heider look back. There were some tables and other customers blocking Mr. Butterly's view, and so he could only see Mr. Heider from the waist up. Mr. Heider told Mr. Butterly that he thought he might have broken something during his fall, and Mr. Butterly asked someone in their group to call 911.

¶ 15    At this point, Mr. Butterly noticed that the mat was curled up towards the right of the door. He did not know how or why it got there, but said it was possible that Mr. Heider might have moved it when he slipped. Mr. Butterly also noticed that the floor was wet. He did not see any puddles but could see that the floor was damp. Like Mr. Heider, Mr. Butterly did not know how or when the floor became wet and had not noticed the dampness when he walked into JL's Pizza. After Mr. Heider's fall, he did not recall seeing anyone dry the entryway floor. He did not see any "wet floor" signs, either before or after Mr. Heider's fall.

¶ 16    Mr. Brace was in the bathroom when Mr. Heider fell. When he returned he saw Mr. Heider lying on the mat to one side of the door and Mr. Heider told him that he had broken his leg. Mr. Brace agreed it was possible that Mr. Heider had moved the mat to the right of the door when he fell. Mr. Brace took a few pictures of the scene on his cell phone while the paramedics were attending to Mr. Heider. At this point, the mat was flat, and the left edge of the mat was to the right side of the doorway. The floor was damp, in an approximately 12-inch by 9-inch area, and Mr. Brace said this could be seen in the photographs. He did not see any "wet floor" signs in the area where Mr. Heider had fallen. About five minutes after Mr. Heider was taken away in an ambulance, Mr. Brace noticed that an employee of JL's Pizza came over, mopped the entrance, and placed the mat in front of the doorway.

¶ 17    Although Mr. Gagner represented in his discovery responses that he "witnessed the occurrence," he testified at his deposition that he was approximately 30 feet away, near the edge

of the bar, and did not actually see Mr. Heider fall. According to him, Mr. Heider and his coworkers were seated as much as 25 feet from the bar's entryway. When he discovered that something had occurred, Mr. Gagner went over and saw Mr. Heider lying on the floor and holding his leg. Mr. Gagner identified himself as the owner of the establishment and called 911. He did not personally examine Mr. Heider's injuries. He did not remain in the area where Mr. Heider had fallen until the paramedics left. He was not able to identify anyone who witnessed Mr. Heider's fall. According to Mr. Gagner, the bartender was more than 10 feet away, behind the bar, when Mr. Heider fell.

¶ 18    Mr. Gagner stated that the mat was not in the same location as it had been when he opened that morning at 11 a.m. He was not sure when it had moved away from the door. He did not believe that anyone had tracked in water from outside i. Mr. Gagner inspected the area after Mr. Heider was taken away and did not notice any moisture or dampness. He could not recall whether he moved the mat back in front of the door at that time.

¶ 19    Mr. Gagner was not aware of any procedures for reporting accidents and did not complete any paperwork regarding Mr. Heider's fall. He knew that water on the cement floor of a bar could create a slipping hazard and stated that if he had come across either a wet mat or a wet cement floor, he would have cleaned it up. Mr. Gagner stated in his discovery responses that JL's Pizza had an informal policy wherein all employees were "instructed and trained to constantly monitor the restaurant and to keep it clean and free of debris and to constantly inspect for any excessive or unusual water or any other conditions." If anything was found, employees were trained to mop or clean the subject area. Mr. Gagner said the bar had "wet floor" signs in its mop closet.

¶ 20    Paramedics took Mr. Heider to a nearby hospital, where he was told he had "a bad break"

and would need surgery. The next day a 16-inch rod was inserted into his bone and screws were placed in his knee and ankle. Mr. Heider had a difficult recovery process. He had multiple leg casts over six to eight weeks before transitioning to a walking boot, to crutches, and finally to a cane. Eventually, the screw in Mr. Heider's knee was removed but he still has three screws in his ankle. Mr. Heider has not had any more complications with his ankle fracture, but he still experiences substantial pain in his knee. According to him, he still has to "baby the leg," and it is sometimes sore at the end of the day. He is no longer able to run or do any other strenuous physical activity. When school started again in the fall of 2015, Mr. Heider was still unable to return to work. He eventually took a different job, driving a delivery truck, which he still does.

¶ 21    JL's Pizza moved for summary judgment, arguing that Mr. Heider's deposition testimony demonstrated that he could not conclusively identify what caused him to fall. It emphasized, in particular, both Mr. Heider's testimony that at the time of his fall he was looking straight ahead and not down at the floor and his testimony that he had no idea how the water he landed in came to be in the bar's entryway or how the floor mat came to be pushed to one side of the door. JL's Pizza argued in the alternative that even if Mr. Heider could point to a specific dangerous condition that caused his injury, there was no evidence that the bar had actual or constructive notice of that condition.

¶ 22    In response, Mr. Heider maintained that the cause of his fall was not speculative and that his deposition testimony was clear: he slipped when he placed his foot on the wet cement floor of the bar's entryway. Emphasizing this point, Mr. Heider attached to his response an affidavit stating as follows:

> "1. Neither my right foot nor my left foot made contact with the floor mat as I exited J.L.'s Pizza and slipped and fell.

2. I do not know who or what caused the floor mat to be pushed or moved to the right side of the exit doorway where I fell. However, I do know that I did not push or move the floor mat to the right side of the exit doorway either before or during my fall.

3. While I was present in J.L.'s Pizza before my fall on March 13, 2015, I did not see any J.L.'s Pizza employees do a walk through and/or inspect the entrance/exit area where I fell."

¶ 23    In its reply brief, JL's Pizza focused solely on its argument that Mr. Heider had failed to present any evidence of constructive notice. The circuit court agreed and granted summary judgment in favor of JL's Pizza on this basis. Mr. Heider now appeals.

¶ 24                                   II. JURISDICTION

¶ 25    The circuit court granted JL's Pizza's motion for summary judgment on May 8, 2018, and Mr. Heider filed his notice of appeal on June 4, 2018. We have jurisdiction over this appeal pursuant to Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) and Rule 303 (eff. July 1, 2017), governing appeals from final judgments in civil cases.

¶ 26                                    III. ANALYSIS

¶ 27    "Summary judgment is proper where the pleadings, depositions, admissions, and affidavits on file reveal that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Thompson v. Gordon*, 241 Ill. 2d 428, 438 (2011). "The purpose of summary judgment is to determine whether a genuine issue of material fact exists, not to try a question of fact." *Id.* A plaintiff need not prove his case at the summary judgment stage. *Id.* Summary judgment is a "drastic and extraordinary remedy" (*Anest v. Bailey*, 198 Ill. App. 3d 740, 744 (1990)) and "should be granted only when the right of the moving party is clear and free from doubt" (internal quotation marks omitted) (*Colburn v. Mario Tricoci Hair Salon &*

*Day Spas, Inc.*, 2012 IL App (2d) 110624, ¶ 32). Where there are "no facts in dispute but reasonable minds could draw different inferences from the facts, then a triable issue exists which precludes the entry of summary judgment." *Jewish Hospital of St. Louis v. Boatmen's National Bank of Belleville*, 261 Ill. App. 3d 750, 755 (1994). We review *de novo* an order granting or denying a motion for summary judgment. *Pielet v. Pielet*, 2012 IL 112064, ¶ 30.

¶ 28    The circuit court in this case granted summary judgment in favor of JL's Pizza because it found there was "no evidence establishing how in this case the water got there [on the floor of the bar's entryway], how long it had been there, or whether any defendant or employees knew or should have known of its presence." Mr. Heider contends that summary judgment was improper because he presented at least some evidence suggesting that, however the water came to be there, it was present for long enough to give JL's Pizza constructive notice of a dangerous condition on its property.

¶ 29    Where, as here, a plaintiff seeks recovery based on a defendant's alleged negligence, "the plaintiff must plead and prove the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and injury proximately resulting from the breach." *Bruns v. City of Centralia*, 2014 IL 116998, ¶ 12. A business owner owes a duty to business invitees "to exercise ordinary care in maintaining their property in a reasonably safe condition." (Internal quotation marks omitted.) *Milevski v. Ingalls Memorial Hospital*, 2018 IL App (1st) 172898, ¶ 29.

¶ 30    Illinois follows section 343 of the Restatement (Second) of Torts (Restatement (Second) of Torts § 343 (1965)). *Genaust v. Illinois Power Co.*, 62 Ill. 2d 456, 468 (1976). According to the Restatement, a possessor of land has a duty to remedy or warn of a dangerous condition on its property if (1) the condition presents an unreasonable risk of harm to people on the property, (2) the defendant knew, or in the exercise of ordinary care should have known, of both the

condition and the risk, and (3) the defendant could have reasonably expected that people on the property would not realize the danger or would fail to protect themselves against such danger. Restatement (Second) of Torts § 343 (1965).

¶ 31　Accordingly, courts have held that a possessor of land may be liable for falls resulting from slips on foreign substances in three circumstances:

> "The general rule is that liability will be imposed where a business invitee is injured by slipping on a foreign substance on the premises if (1) the substance was placed there by the negligence of the proprietor, or (2) his servant knew of its presence, or (3) the substance was there a sufficient length of time so that, in the exercise of ordinary care, its presence should have been discovered, *i.e.*, the proprietor had constructive notice of the substance." *Hayes v. Bailey*, 80 Ill. App. 3d 1027, 1030 (1980).

¶ 32　We begin by noting what is not at issue here. First, there is no question regarding what caused Mr. Heider to fall. Whatever initial arguments it may have made in the circuit court, JL's Pizza now agrees that "the undisputed evidence establishes [Mr.] Heider slipped on a small, unidentified foreign substance near the entrance/exit to JL's Pizza's that every witness described as 'dampness.' " No evidence was presented—beyond the unsupported speculation of Mr. Butterly and Mr. Brace—that Mr. Heider slipped on the mat itself, or on anything other than the damp concrete. Cases relied on by JL's Pizza in the circuit court, standing for the proposition that summary judgment is proper when a plaintiff is unable to identify the cause of his or her injury, are therefore inapplicable. See, *e.g.*, *Kimbrough v. Jewel Cos.*, 92 Ill. App. 3d 813, 817 (1981) (granting summary judgment in favor of defendant store owner where the plaintiff "stated repeatedly in her deposition that she did not know why she fell").

¶ 33    And, as the circuit court noted, absolutely no evidence was presented regarding how the dampness got on the concrete floor. Thus, Mr. Heider's theory of liability cannot rest at this point on a showing that JL's Pizza's employees were responsible for putting it there or that JL's Pizza had actual knowledge of someone else putting it there. But Mr. Heider did present at least some evidence supporting his argument that the dampness was on the floor long enough to give JL's Pizza constructive notice of a dangerous condition on its property.

¶ 34    A business owner "has constructive notice of all conditions discoverable by reasonable inspection of the premises." *Lombardo v. Reliance Elevator Co.*, 315 Ill. App. 3d 111, 120 (2000). Constructive notice may be proven by demonstrating that a condition existed for an extended period of time and the defendant could therefore have discovered the condition "through the exercise of reasonable care." *Id.* If the plaintiff is able to present any evidence tending to show constructive notice, summary judgment is not appropriate and the case should proceed to trial. *Hayes*, 80 Ill. App. 3d at 1030. "Generally, whether a defendant is deemed to have constructive notice of the existence of a dangerous condition on its property is a question of fact." *Smolek v. K.W. Landscaping*, 266 Ill. App. 3d 226, 229 (1994).

¶ 35    We agree with JL's Pizza that Mr. Heider's reliance on Mr. Gagner's testimony regarding what Mr. Heider describes as a "continuous" inspection policy is misplaced. There is no general duty for a business owner to continuously inspect the business premises. *Hresil v. Sears, Roebuck & Co.*, 82 Ill. App. 3d 1000, 1002 (1980) (holding that it would be an "unfair requirement" to suggest that a store owner must constantly patrol its aisles). What Mr. Gagner described when he claimed that employees were "instructed and trained to constantly monitor" the establishment is really nothing more than the lack of a formal, time-based inspection policy. Cases that plaintiff relies on, like *Newsom-Bogan v. Wendy's Old Fashioned Hamburgers of*

*New York, Inc.*, 2011 IL App (1st) 092860, ¶ 19, in which constructive notice was premised on such a time-based policy, are thus distinguishable. In *Newsom-Bogan*, the plaintiff claimed that she slipped and fell on grease on the defendant's floor. *Id.* ¶ 5. The court found that the defendant's written manual was "sufficient to create a duty to inspect every 15 minutes." *Id.* ¶ 19. And because the plaintiff did not see any employees inspecting the area for 20 minutes, the court held that this was sufficient to create a question of fact as to constructive notice, based on the defendant's failure to follow its own policy. *Id.*

¶ 36    Here, the important thing about Mr. Heider's testimony is not that he did not see any employee inspect the entryway while he was at JL's Pizza, but rather that during that entire time he did not see anything that could have caused water to get there, indicating that the dampness was there the whole time. This is also what distinguishes this case from our decision in *Tomczak v. Planetsphere, Inc.*, 315 Ill. App. 3d 1033 (2000). In *Tomczak*, the plaintiff slipped and fell at the defendant's skating rink. *Id.* at 1035. The plaintiff testified that she noticed a puddle in the area where she fell but she was "unable to say how long the puddle was present" or what had caused it. *Id.* JL's Pizza contends that Mr. Heider has similarly presented no evidence as to how long the dampness that caused his fall was present before he slipped. But this assertion ignores the deposition testimony of Mr. Heider, Mr. Brace, and Mr. Butterly. All three individuals testified that there was no rain the day of Mr. Heider's accident. Further, none of them saw anyone spill anything near the front door, nor did they notice any employees mopping the area near the front door. Mr. Heider testified that he had a view of the bar's entryway from where he sat for the entire 1 hour and 40 minutes that he was present at JL's Pizza. This testimony was corroborated by Mr. Brace, who testified that he never saw Mr. Heider leave the table at any point before leaving the bar.

¶ 37    JL's Pizza makes much of the fact that Mr. Heider could only see a corner of the door itself and may have lost sight of that corner when he walked around the table where his coworkers were gathered. But as Mr. Heider points out, he did not fall in the doorway, but in the space in front of the doorway. Mr. Heider's testimony is that he could see this area from his table, he never left the table, and during that time he witnessed nothing that would have caused the water he later slipped on to be there. On a motion for summary judgment, we must construe the evidence "strictly against the movant and liberally in favor of the opponent." *Kolakowski v. Voris*, 83 Ill. 2d 388, 398 (1980). We conclude that Mr. Heider's unrebutted testimony was enough to create a genuine issue of material fact regarding whether the water in the entryway was present for long enough to give JL's Pizza constructive notice of a dangerous condition on its property.

¶ 38    If by insisting that summary judgment was proper because Mr. Heider did not present any "affirmative evidence" as to how long the dampness was present near its front door, JL's Pizza believes that Mr. Heider was required to present *direct* evidence of constructive notice, this is incorrect. Facts may be shown by either direct or circumstantial evidence. See *Van Steemburg v. General Aviation, Inc.*, 243 Ill. App. 3d 299, 322 (1993) (noting that a party "is entitled to establish negligence by circumstantial evidence alone"). And circumstantial evidence alone may be enough to defeat summary judgment if the conclusions to be drawn from the evidence "are probable, not merely possible." *Boatmen's National*, 261 Ill. App. 3d at 755. Mr. Heider testified that he was within view of the entryway to JL's Pizza for 1 hour and 40 minutes before he fell, and during that time, he saw no one spill anything or mop the entryway floor. Mr. Heider's account is neither inherently improbable nor self-contradictory. See *Bucktown Partners v. Johnson*, 119 Ill. App. 3d 346, 354 (1983) (finding a witness's testimony "inherently

improbable" under Illinois law only "if it is contradictory of the laws of nature or universal human experience" (internal quotation marks omitted)). Nor was it contradicted by any other testimony or evidence. No one said that they observed a dry entryway floor when Mr. Heider and his coworkers arrived at JL's Pizza. And no witness saw anything occur during the time that Mr. Heider was seated within view of the entryway that could have caused the water to be there.

¶ 39    Taking Mr. Heider's unrebutted testimony as true, together with the testimony of every witness that it was a clear day on which no customers would have tracked rainwater in from outside the bar, it is a reasonable inference—and not a mere possibility among equally plausible explanations—that the water, however it came to be in the entryway of the bar, was there the whole time. Whether this is sufficient evidence to establish constructive notice of a dangerous condition that required JL's Pizza to remedy the situation or provide a warning to its patrons is a question for the trier of fact to decide. It certainly constitutes *some* evidence of constructive notice. And that is all that is necessary to survive summary judgment. See, *e.g.*, *Rexroad v. City of Springfield*, 207 Ill. 2d 33, 46 (2003) (holding summary judgment was inappropriate where the record contained at least "some evidence" that students could become distracted and fail to avoid the otherwise open and obvious risk of a hole in a school parking lot); *Prostran v. City of Chicago*, 349 Ill. App. 3d 81, 85 (2004) ("A plaintiff need not prove her case during a summary judgment proceeding, but must present *some evidence* to support each element of the cause of action." (Emphasis added.)).

¶ 40    This case is different from the cases JL's Pizza relies on in which there was no evidence—direct or indirect—regarding how long a foreign substance was present on the defendant's premises. In *Hayes*, for example, this court affirmed the trial court's decision directing a verdict for the defendant because the plaintiff presented no evidence that the water on

which he slipped "had been on the floor [for] a substantial period of time." *Hayes*, 80 Ill. App. 3d at 1031. In *Hresil*, 82 Ill. App. 3d at 1002, a directed verdict for the defendant was appropriate, given that the plaintiff had provided no evidence that the foreign substance was on the floor of the store for longer than 10 minutes and this was, in the court's view, too short a time period to put the defendant on constructive notice of a dangerous condition.

¶ 41    The situation in this case more closely resembles that in *Wiegman v. Hitch-Inn Post of Libertyville, Inc.*, 308 Ill App. 3d 789 (1999). There the plaintiff's sister testified that she had been in the area earlier the same day and had observed considerable water in the area of the fall. *Id.* at 793. Because the plaintiff had thus presented *some* evidence that the puddle of water could have existed for three hours prior to her fall, the court found the issue of constructive notice was properly submitted to the jury. *Id.* at 802.

¶ 42    The facts presented here are also distinguishable from those in *Smolek*, another case relied on by JL's Pizza. In *Smolek*, the plaintiff tripped over a hole in the defendant's lawn. *Smolek*, 266 Ill. App. 3d at 226. The plaintiff herself did not see the hole when she was walking around because it was hidden by grass and vegetation. *Id.* at 227. When, after her fall, the plaintiff tried to explain to the defendant where the hole had been, the defendant even then struggled to find it. *Id.* The defendant explained that there were "tree roots, wood chips, and vegetation inside the hole." *Id.* The court affirmed a directed verdict in defendant's favor on the basis that a property owner cannot have constructive notice of a dangerous condition if the evidence establishes that it was concealed in such a way that it would not be detected in the exercise of ordinary care. *Id.* at 230.

¶ 43    JL's Pizza contends that it is Mr. Heider's argument that the dampness in the entryway was concealed by the floor mat. But Mr. Heider made clear in his response to JL's Pizza's

motion for summary judgment that he was "not claiming that the floor mat caused his fall" but rather that his "fall was caused by water on the cement floor." The notion that the wet mat may have concealed the wet floor for any length of time is nothing but speculation. Because there is no evidence in this case that a reasonable inspection would not have revealed the damp concrete, JL's Pizza's reliance on *Smolek* is misplaced.

¶ 44    However, we must also reject Mr. Heider's argument that the only reasonable inference to be drawn from the mat's location relative to the entryway is that an employee of JL's Pizza moved the mat aside and therefore had *actual* notice of the water on the floor. On the record before us, there is simply no way to determine how or when the mat shifted position.

¶ 45    Because Mr. Heider has presented some evidence, albeit circumstantial evidence, that the wet floor he slipped on existed for approximately 1 hour and 40 minutes prior to his fall, whether JL's Pizza had constructive notice of a dangerous condition on its property is a question of fact for the trier of fact to resolve. Summary judgment was improper.

¶ 46                                   IV. CONCLUSION

¶ 47    For the foregoing reasons, we reverse the judgment of the circuit court and remand for further proceedings consistent with this order.

¶ 48    Reversed and remanded.