2022 IL App (1st) 211581-U

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

SECOND DIVISION
December 13, 2022

No. 1-21-1581

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| JOSEPH ELLIS, | ) | |
| | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court of |
| | ) | Cook County |
| v. | ) | |
| | ) | No. 17 L 10936 |
| ICC GROUP, INC. d/b/a ILLINOIS CONSTRUCTORS | ) | |
| CORPORATION and WBK ENGINEERING, LLC, | ) | The Honorable |
| | ) | Rena Van Tine, |
| Defendants | ) | Judge Presiding. |
| | ) | |
| (ICC Group, Inc., Defendant-Appellee). | ) | |

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court. Justices Ellis and Cobbs concurred in the judgment.

**ORDER**

¶ 1     *Held:* Trial court's granting of summary judgment in favor of defendant is reversed, where defendant owed a duty of care to the plaintiff under a negligence theory of premises liability and a genuine issue of material fact existed as to proximate cause.

¶ 2      The plaintiff, Joseph Ellis, appeals from the trial court's granting of summary judgment in favor of the defendant, ICC Group, Inc. d/b/a Illinois Constructors Corporation, on all counts of his complaint for negligence. The basis of the trial court's ruling was that the defendant, a general contractor, owed no duty of care to the plaintiff, an employee of a subcontractor. The trial court

also found that the element of proximate cause was not satisfied. We reverse and remand.

¶ 3                                    I. BACKGROUND

¶ 4        The summary judgment record discloses the following facts, which we set forth in the light most favorable to the plaintiff, as the party opposing summary judgment. In 2015, the defendant served as the general contractor on a project to modify a dam at the Busse Woods Reservoir, which was part of a flood control project undertaken by the Village of Elk Grove Village (Village). This project involved modification of the dam to install two new dam "gates" that could be operated hydraulically via remote control. The work was divided into two stages, with a gate for the west half of the dam being installed first, followed by the gate for the east half of the dam. To hold back water and create a dry area where work could be performed, the defendant first built a temporary cofferdam around the west side of the dam. A new concrete platform was built next, which was approximately eight feet wide, and the dam gate was then installed on top of that platform. The plaintiff's fall occurred in the final days of the project's first stage, when the west side cofferdam was in place, the west platform was built, and the west gate had been installed.

¶ 5        The plaintiff was a commercial electrician employed by the electrical subcontractor on the project, Lyons & Pinner (Lyons). On October 28, 2015, Lyons had assigned the plaintiff to help Kevin McLaughlin, the Lyons electrician primarily working on the dam project, run electrical wires through conduit to reach the dam. This was the plaintiff's first day working at this site, and the plan was for it to be his only day working there. The two men spent the morning pulling the wires through the conduit, from the shed where it was stored toward the dam itself. They reached the dam in mid-afternoon. There, wires had to be run to reach equipment on both the north and south sides of the gate platform.

¶ 6        As stated, by this time the gate was in place atop the concrete platform. It had been installed

eight days earlier, on October 20-21. From the evidence, we would describe the gate as a curved steel structure, approximately five feet in height. Horizontally, it extends the full length of the concrete platform, between vertical pillars on both sides that run to the bridge above. Neither of the gate's sides are flat. The gate's north side (*i.e.*, the side facing the reservoir) curves in a convex fashion, while its south side is concave. Also, when upright, the gate is not fully perpendicular to the platform below, but instead it rises at a southward angle.

¶ 7    The platform was accessible by a ramp that ran from the road above to the platform's north side, and this was how the plaintiff and McLaughlin first accessed the area. Once there, the plaintiff found no evident method of access to reach the platform's south side. He testified that he did not ask McLaughlin for a method to cross over the gate but that McLaughlin told him that he had simply been jumping across the gate and sliding down. McLaughlin testified that this was the method he had seen other tradesman use to get back and forth over the gate since it had been installed eight days earlier, although he had also seen workers use a ladder to climb up one of the sides. The plaintiff saw McLaughlin grab the top of the rail, swing himself up, and flip over to the other side. The plaintiff, then age 59, said that he was "too old for that" and did not believe it was safe to jump over the gate. He saw that an extension ladder was on the south side of the gate, and he asked McLaughlin if they needed a second ladder to get across it. McLaughlin answered yes, that one was by the road. The plaintiff then went to the road and retrieved a second ladder. He positioned it against the north side of the gate, adjacent to the ladder that was already positioned against its south side. He then tied the two ladders together with mule tape, which is a heavy nylon cord that the electricians used on the job site. He testified that the reason he tied the two ladders together was because he thought this would make it safer for him to cross the gate using the two ladders. McLaughlin did not help him do this, but he said that it was fine after seeing what the

plaintiff was doing.

¶ 8        After that, the plaintiff successfully used the ladders to climb across the gate to the south side of the platform, and he and McLaughin did work there for approximately one hour. After completing his work, the plaintiff attempted to return to the north side by climbing the ladders to cross the gate. As he was in the process of pivoting to transfer from the south-side ladder to the north-side ladder, he lost his balance and fell backwards onto the concrete ledge and water below. He sustained injuries, which apparently included a lumbar spine fracture requiring surgery, impingement syndrome in his left rotator cuff, and a concussion.

¶ 9        Following this incident, the plaintiff filed a three-count complaint against the defendant. Count I was a for general negligence. It alleged that the defendant had a duty to exercise reasonable care in ensuring that the project site was a safe workplace for the plaintiff and others, and the defendant breached that duty, *inter alia*, by allowing workers to use unsecured ladders to cross the gate. Count II pled a claim under section 414 of the Restatement (Second) of Torts, alleging that the defendant was negligent, *inter alia*, by failing to exercise control over job site activities with reasonable care so as to provide the plaintiff and others with a safe place to work. Finally, count III plead a claim of premises liability. It alleged that the defendant was negligent, *inter alia*, in allowing an unsecured ladder to exist on the project site as the presumptive method of scaling the dam gate while working on it, failing to ensure that the ladder was secure, allowing workers including the plaintiff to work on an unsecured ladder, failing to warn, and failing to discover and remedy the dangerous condition.

¶ 10        Following discovery, the defendant filed a motion for summary judgment. It argued that the evidence was insufficient to show that it had "retained control" over the work done by the Lyons electricians on the job site sufficient to impose on it a duty under section 414 of the Restatement

(Second) of Torts. The defendant argued that its subcontract with Lyons showed that Lyons had full control over the means and methods of its own work, and there was no evidence of conduct by the defendant's employees retaining control over the safety or the details of the subcontractors' work. It also argued that the evidence did not support a claim of premises liability, because the undisputed evidence showed that the defendant was not the possessor of the premises, that the incident did not involve a condition of the land, that it did not have notice of any unsafe condition, and that the plaintiff's ladder set-up was itself an open and obvious danger. The defendant further argued that there was no evidence to satisfy the element of proximate cause.

¶ 11    In response, the plaintiff argued that as general contractor, the defendant was responsible for creating a safe means of access to both sides of the dam gate for all tradesman who needed to work there, and the defendant breached this duty by leaving it up to each trade to fashion its own way over the gate to do its work. He relied on the knowledge that the defendant should have had from constructing the dam gate, its being on site to recognize that tradesmen were working on both sides of the gate, and its responsibility to coordinate the work of the various subcontractors. He relied on contractual provisions concerning the defendant's responsibilities. As evidence of control, he cited evidence that the defendant's carpenters did in fact construct a wooden platform over the gate after his injury and had also constructed a safety rail down the ramp to the dam. He also cited the affidavit of Frank Burg, his expert in construction matters and safety, attesting that the defendant had violated OSHA regulations and that the duty to create safe access within a jobsite is understood to be the role of the general contractor. He further cited additional deposition testimony by occurrence witnesses concerning their expectation that the general contractor, not an electrical subcontractor, would have the responsibility of providing a temporary structure to enable workers to cross a dam gate. He cited deposition testimony from the defendant's superintendent

on the project, Scott Lampson, who was not on site that afternoon, that he would have stopped the plaintiff and removed him from the job if he had seen him using two ladders to cross over the gate.

¶ 12     The trial court granted the defendant's motion for summary judgment. It found that the defendant did not owe a duty of care to the plaintiff under either a "retained control" or premises liability theory of negligence. It found that the defendant had no actual or constructive notice of any dangerous condition. It found no facts supporting an inference that the defendant retained the degree of control, supervision, or monitoring of the jobsite comparable to cases in which a duty has been imposed under section 414. It further found no proximate cause between any alleged negligence and the plaintiff's injuries. It found that the dam gate was a "condition" rather than the "cause" of injury, with the cause being the plaintiff's own conduct in using the ladders to transfer across the dam gate. It also found no evidence of foreseeability to satisfy the "legal cause" aspect of the proximate causation analysis. The trial court later denied a motion to reconsider filed by the plaintiff. This appeal then followed.

¶ 13                                    II. ANALYSIS

¶ 14     This appeal involves the trial court's granting of a motion for summary judgment, which we review *de novo*. *Johnson v. Armstrong*, 2022 IL 127942, ¶ 31. For the granting of a motion for summary judgment to be proper, the pleadings, depositions, and admissions on file, together with the affidavits, if any, must show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2020). A genuine issue of material fact exists where the material facts are disputed or, if they are undisputed, where reasonable persons might draw different inferences from them. *Johnson*, 2022 IL 127942, ¶ 31. In evaluating whether a genuine issue of material fact exists, a court construes the evidence in the light most favorable to the nonmoving party and strictly against the movant. *Id.*

¶ 15                                            A. Duty

¶ 16        In any negligence case, the plaintiff must establish the existence of a duty of care owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach. *Carney v. United Pacific R.R. Co.*, 2016 IL 118984, ¶ 26. Whether a duty exists is a question of law appropriate for summary judgment. *Id.* Absent a showing from which the court could infer the existence of a duty, a plaintiff may not recover as a matter of law and summary judgment in favor of the defendant is properly granted. *Id.*

¶ 17        Every person owes a duty of ordinary care to all others to guard against injuries that naturally flow as a reasonably probable and foreseeable consequence of an act, and such duty does not depend upon contract, privity of interest, or the proximity of relationship. *Bogenberger v. Pi Kappa Alpha Corp.*, 2018 IL 120951, ¶ 22. Accordingly, where a party's course of action creates a foreseeable risk of injury, that party has a duty to protect others from such injury. *Id.* The duty inquiry asks whether the defendant and the plaintiff stood in such a relationship to one another that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff. *Id.* (citing *Ward v. K Mart Corp.*, 136 Ill. 2d 132, 140 (1990)). Whether a duty exists is also an inquiry shaped by public policy. *Bogenberger*, 2018 IL 120951, ¶ 22 (citing *LaFever v. Kemlite Co.*, 185 Ill. 2d 380, 388 (1988)). The traditional duty test involves four factors: (1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing that burden on the defendant. *Bogenberger*, 2018 IL 120951, ¶ 22.

¶ 18        On appeal, the plaintiff argues that the defendant owed him a duty of care under two separate theories of negligence. The first involves the duty owed by a party who has "retained control" over work entrusted to an independent contractor, governed by section 414 of the Restatement (Second)

of Torts. The second involves the duty owed by a possessor of land for dangerous conditions on the land under a theory of premises liability. Whether a duty exists under the latter theory is governed by the principles of sections 343 and 343A of the Restatement (Second) of Torts. These are independent duties and theories of negligence, and a defendant can be found to owe a duty under one but not the other. *Clifford v. Wharton Business Group, L.L.C.*, 353 Ill. App. 3d 34, 41 (2004). As explained below, we find that to be the case here. We conclude that the defendant owed a duty to the plaintiff as a possessor of land under a theory of premises liability, but that the defendant did not sufficiently retain control of the work of a subcontractor such that it owed a duty under section 414.

¶ 19                                           1. Premises Liability

¶ 20            We choose to begin with the theory under which we find a duty to exist, which is that the defendant owed the plaintiff a duty of care under a premises liability theory of negligence. In such a claim, the foreseeability-of-injury prong of the duty test is determined with reference to section 343 of the Restatement (Second) of Torts. *LaFever*, 185 Ill. 2d at 389. That section provides that a "possessor" of land is subject to liability for harm caused by a "condition on the land" if he: knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm; should expect that invitees will not discover or realize the danger, or will fail to protect themselves against it; and fails to exercise reasonable care to protect invitees against the danger. Restatement (Second) of Torts § 343, at 215-16 (1965).

¶ 21            The foreseeability of an injury and its likelihood of occurring from a condition on the land is also affected by whether the danger posed by the condition is open and obvious to an invitee. The "open and obvious rule" is reflected in section 343A of the Restatement (Second) of Torts and has been adopted into Illinois law. See *Deibert v. Bauer Brothers Construction Co.*, 141 Ill. 2d 430,

434-36 (1990). Under section 343A, "[a] possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, *unless the possessor should anticipate the harm despite such knowledge or obviousness.*" (Emphasis added). Restatement (Second) of Torts § 343A(1), at 218 (1965). The rule impacts the foreseeability and likelihood of injury prongs of the duty test because it stems from the presumption that it is not foreseeable that a person will intentionally encounter the risk of an open and obvious danger, thereby making injury less likely. See *Bruns v. City of Centralia*, 2014 IL 116998, ¶ 19. However, exceptions exist to the open and obvious rule. The exception relevant to this case is the "deliberate encounter" exception, which provides that a possessor of land should anticipate harm when the possessor " 'has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk.' " *Id.* ¶ 20 (quoting Restatement (Second) of Torts § 343A, cmt. f, at 220 (1965)); *LaFever*, 185 Ill. 2d at 391. In instances where this exception is applicable, an injury is considered more foreseeable to a defendant and more likely to occur, thus weighing in favor of the imposition of a duty. *Bruns*, 2014 IL 116998, ¶ 20.

¶ 22    We first address the threshold argument raised by the defendant that it owes no duty under section 343 because it was not a "possessor" of the land where the plaintiff's injury occurred. It argues that the dam where the plaintiff was injured was owned and operated by the Village and by the Forest Preserve District of Cook County, and there is no evidence that the defendant had any power to exclude anyone from the land, to control what was built there, or to take any other action indicating dominion over the property. We find no merit to this argument. This court has defined a possessor of land as " 'a person who is in occupation of the land with intent to control it.' " *Madden v. Paschen*, 395 Ill. App. 3d 362, 375 (2009) (quoting Restatement (Second) of Torts

§ 328E, at 170 (1965)); *O'Connell v. Turner Construction Co.*, 409 Ill. App. 3d 819, 824 (2011). Although a general contractor is not always considered a possessor of a site under construction, the evidence in this case shows that the defendant was the possessor of the dam platform where the plaintiff's injury occurred. The defendant was hired as a general contractor to install a cofferdam and thereby create a dry construction site within the reservoir, upon which it erected a concreate platform and installed the dam gate. By doing this and acting as general contractor to oversee completion of the work to install the dam gates, the defendant effectively created the site where the plaintiff's injury occurred and exercised control over it during the time construction was ongoing. Accordingly, the defendant is a possessor of the land at issue for purposes of section 343.

¶ 23    Next, we address the defendant's argument that it owed no duty to the plaintiff under section 343 because his injury was not caused by a "condition on the land." The defendant characterizes the plaintiff's injury as being caused by his own conduct "in creating an unsafe ladder set-up for himself," which it contends is an unsafe work practice, not a condition on the land. By contrast, the plaintiff argues that the condition on the land that caused his injury was the existence of the dam gate on the platform without a safe means of access over it for workers required to perform work on the platform's south side. The plaintiff has the correct argument here. The defendant's argument about whether the plaintiff's injury was caused solely by his own conduct is effectively one of proximate cause or comparative fault, not duty. Here, we are dealing with the legal issue of whether the defendant owed a duty, and more specifically whether an injury like the one that the plaintiff suffered was reasonably foreseeable to the defendant. If we were to accept the defendant's argument, then effectively we would be evaluating the defendant's duty based upon the conduct of the plaintiff, which is improper. Instead, the proper subject of our focus is the defendant and whether it could reasonably have foreseen an injury like the one the plaintiff suffered. See *Ward*,

136 Ill. 2d at 148 ("The scope of defendant's duty is not defined by reference to plaintiff's negligence or lack thereof. The focus must be on defendant. A major concern is whether *defendant* could reasonably have foreseen injury to the plaintiff." (Emphasis in original)). Accordingly, we see the question as being whether the defendant could reasonably have foreseen that a tradesman in the plaintiff's position would attempt to use ladders set on each side of the dam gate to cross over it and fall in the process of doing so. We believe that an injury of this nature was reasonably foreseeable to the defendant due to the gate's blocking of land access to the entire south side of the platform despite the fact that tradesmen had work to perform there.

¶ 24    The record contains direct and circumstantial evidence from which a trier of fact could reasonably conclude that the defendant had actual or constructive knowledge of various facts bearing on its ability to reasonably foresee that workers would use ladders in an attempt to cross the dam gate and fall in the process. Constructive knowledge may be proven by demonstrating that a condition existed for a sufficient period of time such that the defendant could have discovered it through the exercise of reasonable care. *Heider v. DJG Pizza, Inc.*, 2019 IL App (1st) 181173, ¶ 34. Generally, whether a defendant is deemed to have constructive knowledge of the existence of a dangerous condition on its land is a question of fact. *Id.*

¶ 25    There is no dispute that the defendant had knowledge of the dam gate itself and that its presence blocked access by land to the south side of the platform. As we described it above, the gate is a curved steel structure, approximately five feet in height. When upright, it is angled rather than perpendicular to the platform below. It runs the full length of the concrete platform between the vertical pillars on each side holding up the bridge above. The gate had been in place for seven to eight days prior to the plaintiff's injury.

¶ 26    The evidence indicates that that the defendant's employees were aware that, once the dam

platform was installed, no easy method of access existed to reach the south side of the dam platform. Apart from the gate itself, access to the other sides of the platform were impeded by water from the reservoir and creek, the vertical pillars, and the walls of the cofferdam. Scott Lampson, who served as the defendant's superintendent on the job, testified that after the gate was installed, he did not believe that workers should have had to get to the south side of the platform; but if they did, they should "come in by boat on the south side of the dam," put boots on and walk through the water if it was low enough, or "use scaffolding." David Krueger, the defendant's project manager for this project, testified that after the gate's installation, someone needing to access the platform's south side could "take a boat," "put waders on and walk[ ] through the gate [*sic*] depending on the river level," "set up a scaffolding system," or "request[ ] that the gate be lowered." Lampson testified that the defendant's own employees used a boat to get to and from the south side, but that the defendant's boat was not available for use by the subcontractors. Krueger similarly testified that the subcontractors would have had to provide their own boats.

¶ 27    If the undisputed evidence showed how the defendant communicated these expectations to the subcontractors, we would be more likely to agree that an injury from a subcontractor's employee attempting to cross the gate using ladders was unforeseeable. However, neither party draws our attention to any evidence on this point. Instead, a trier of fact could reasonably draw the inference from the evidence that nothing was ever communicated between the defendant and Lyons about accessing the south side of the platform. Both Lampson and Krueger testified that the defendant left it to the subcontractors to determine the means and methods by which they would access the platform's south side. McLaughlin testified that the defendant did not provide him with any direction or instruction about how to transfer over the gate. Lampson testified that nobody ever asked him for a way to access one side of the dam from the other. Lampson testified that if

he had been asked (specifically by the plaintiff or McLaughlin), he would have told them that the defendant could not provide them with ladders or a boat for liability reasons but instead that "they have to have *** their own people figure out what they need and okay it with us."

¶ 28 We recognize that the plaintiff is unable to cite direct evidence that the defendants were aware that the Lyons electricians had work to perform on the south side of the platform once the gate was installed and thus had reason to cross the gate. Nevertheless, we find that the circumstantial evidence is sufficient to show an issue of fact concerning the defendant's actual or constructive knowledge that following the gate's installation, tradesman had work to perform on the south side of the platform and were accessing it by jumping over the gate or using ladders to cross it. McLaughlin testified that following the gate's installation, he observed workers from the various trades crossing the gate by hopping over it or by using a ladder to climb over it. McLaughlin testified that he never saw the gate in a lowered or down position after it was installed. The record contains various photographs taken between the time of the gate's installation and the plaintiff's injury showing workers on both sides of the gate, as well as various ladders on the ground and propped against the sides of the gate. Workers in vests with the defendant's logo are shown in some of these photographs. Also, Lampson testified that he was at the site every day overseeing what was going on there (although he had left in the morning on the day of the plaintiff's injury). Furthermore, there is evidence from the affidavit of Frank Burg, the plaintiff's expert in construction matters and construction site safety, that the defendant was required by OSHA regulations to conduct frequent and regular inspections of the job site. See 29 C.F.R. § 1926.20(b)(1), (2) (2012).

¶ 29 Further bearing on the issue of whether an injury like the plaintiff's was reasonably foreseeable to the defendant is evidence of the custom and practice of general contractors

concerning safeguards within a job site and the expectations of invitees that come onto the premises. See Restatement (Second) of Torts § 343, cmt. d, at 217 (1965). John Ott, who was the project manager for Lyons on this project, testified that in his 32 years of professional experience, "it is the obligation of the general contractor to provide a structure, a platform, temporary safe condition platform over a structural non-electrical portion item to work over. To me it's not Lyons and Pinner's obligation to provide a temporary structure over a dam." McLaughlin also testified that he believed that a general contractor was "supposed to provide the means of how to navigate their job site." Burg's affidavit states that on multi-employer worksites such as this, the custom and practice is that a general contractor will implement a program to assure proper access, coordination of work activities, communication of specific work rules, job site monitoring, and enforcement when rules are violated. Burg states that any reasonable safety program would have assured the general contractor will make certain that subcontractors will have proper access to their work area. All of this evidence supports the conclusion that it was reasonably foreseeable to the defendant that workers might fail to appreciate the need to bring equipment such as a boat, waders, or a scaffold to reach the south side of the platform and instead proceed to cross the gate by using ladders, which could result in a fall.

¶ 30    Notwithstanding the evidence discussed above, we must also consider whether the open and obvious nature of the condition negated the foreseeability of injury to the defendant, as well as the plaintiff's argument that the "deliberate encounter" exception to the open and obvious rule applies. The plaintiff acknowledges in his brief that the gate over which he needed to traverse was open and obvious. He argues, however, that the obviousness of the danger does not make an injury like his unforeseeable, because the defendant should have anticipated that he or other workers would cross over the gate in order to complete the work that had to be done on the south side of the

platform. As stated, this is the "deliberate encounter" exception to the open-and-obvious rule, which provides that a possessor of land should anticipate harm when the possessor " 'has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risks.' " *LaFever*, 185 Ill. 2d at 391 (quoting Restatement (Second) of Torts § 343A, cmt. f, at 220 (1965)). This exception recognizes that individuals will make deliberate decisions to encounter hazards when faced with employment concerns, and those encounters are reasonably foreseeable to possessors of land. *Grillo v. Yeager Construction*, 387 Ill. App. 3d 577, 596 (2008) (citing *LaFever*, 185 Ill. 2d at 394-95). The focus of the deliberate-encounter analysis remains on what the possessor of land anticipates or should anticipate that the entrant will do. *Grillo*, 387 Ill. App. 3d at 596.

¶ 31    In arguing that this exception applies, the plaintiff relies on evidence showing that on the day he fell, he had electrical work to perform on the south side of the platform. To access the south side to complete that work, he had to encounter and traverse the dam gate. To return, he had to traverse the gate again. The plaintiff further cites the following statement in Burg's affidavit concerning what the defendant should have anticipated a tradesman in his position would do:

> "Human factors should be considered in this case. Mr. Ellis and all workers expect controlling employers to provide safe access and egress. Once they are on the job working on the coffer dam, it would be unusual to stop the project and demand an access ladder. Most workers like Mr. Ellis will figure out a way to get the job done."

¶ 32    For its part, the defendant does not refute the plaintiff's assertion that it should have anticipated that he would have attempted to cross the dam gate to complete his work. Instead, it argues that the plaintiff's use of the two ladders tied together was itself an open and obvious

danger. The defendant argues that the "deliberate encounter" exception involves reasonableness, that there is no evidence that it was reasonable for the plaintiff to use "his self-made, unsafe condition," and that he could have asked his employer for a different method to reach his work.

¶ 33     Mindful that we are addressing the foreseeability prong of the duty test, we agree with the plaintiff's argument that the deliberate encounter exception applies. We find that the defendant should reasonably have anticipated that a worker in the plaintiff's position would have proceeded to encounter the hazard posed by crossing over the dam gate in order to complete the work he was required to do on the south side. Although other ways may have existed to reach the platform's south side, we believe the defendant should have anticipated that a tradesman would find procuring a boat, waders, or scaffolding far more onerous than simply attempting to cross the gate with ladders. This is especially true if the tradesman only had to work on the south side of the platform for a brief time. The defendant cannot escape owing a duty merely by asserting that the plaintiff's use of ladders was itself unreasonable or unsafe. Rather, we find it reasonably foreseeable to the defendant that workers needing to work on the south side of the platform would deliberately attempt to cross the gate in some fashion. This includes attempting to do so by propping ladders against each side and attempting to pivot from one to the other. The plaintiff's own conduct or method of crossing the gate may later affect the ultimate issue of liability or the parties' comparative fault, but it does not affect the existence of a duty. *LaFever*, 185 Ill. 2d at 396-97; *Preze v. Borden Chemical, Inc.*, 336 Ill. App. 3d 52, 59 (2002).

¶ 34     Turning to the remaining factors of the duty test, we find that they also weigh in favor of imposing a duty in this case. While we find that the likelihood of injury here is lessened by the open and obvious danger posed by the dam gate, this is offset by the recognition that workers would be likely to proceed to deliberately encounter that risk in order to complete their job duties

on the south side of the platform via one of the most evident methods of doing so, using ladders to climb over it. Further, we find that injuries from falling off a ladder are a likely result of attempting to cross the curved, angled dam gate by use of such ladders.

¶ 35　　The final two factors of the duty test involve the magnitude of the burden of guarding against the injury and the consequences of placing that burden on the defendant. *Bogenberger*, 2018 IL 120951, ¶ 22. We find the magnitude of guarding against the injury to be slight and thus the consequences of placing that burden on the defendant to be unsubstantial. It may well be that the injury could have been guarded against by clearer warnings or direction to the subcontractors about the appropriate methods for their employees to cross the gate or access the platform's south side. Also, the evidence suggests that the gate could simply be lowered from its upright position to enable easier passage. The evidence also shows that the defendant employed carpenters on its staff who were capable of constructing a structure to enable workers to safely cross over the gate.

¶ 36　　For these reasons, we hold that application of the four factors of the duty test weigh in favor of the conclusion that the defendant owed the plaintiff a duty of care under a premises liability theory of negligence.

¶ 37　　　　　　　　　2. Section 414 of the Restatement (Second) of Torts

¶ 38　　In addition to any duty owed under a premises liability theory, the plaintiff argues that a duty should also be imposed on the defendant based on its "retained control" over the job site under section 414 of the Restatement (Second) of Torts. Section 414, which has been recognized as an accurate statement of Illinois law (see *Carney*, 2016 IL 118984, ¶ 35), provides as follows:

　　　　"One who entrusts work to an independent contractor, but who retains control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise

his control with reasonable care." Restatement (Second) of Torts § 414, at 387 (1965). This rule serves as a basis only for imposing direct liability on the party employing an independent contractor for its own negligence, not for imposing vicarious liability for the negligence of an independent contractor. *Carney*, 2016 IL 118984, ¶ 36.

¶ 39    In determining whether section 414 applies, the inquiry involves the level of a defendant's "retained control" over the work of an independent contractor. Comment a to section 414 indicates that a defendant can be subject to liability under this section if it retains "supervisory control," *i.e.*, "the power to direct the order in which the work shall be done, or to forbid its being done in a manner likely to be dangerous to himself or others." Restatement (Second) of Torts § 414, cmt. a, at 387 (1965). Comment c to section 414 explains further:

> " In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way." Restatement (Second) of Torts § 414, cmt. c, at 388 (1965).

¶ 40    Consistent with these provisions, a general right to enforce safety does not amount to retained control under section 414. *Carney*, 2016 IL 118984, ¶ 47. Further, the existence of a safety program, safety manual, or safety director is insufficient to trigger liability. *Madden*, 395 Ill. App. 3d at 382. Rather, the evidence must show such a retention of the right of supervision that the

independent contractor is " 'not entirely free to do the work in his own way.' " *Id.* (quoting Restatement (Second) of Torts § 414, cmt. c, at 388 (1965)). Whether an employing defendant has retained sufficient control over an independent contractor's work may be decided as a matter of law where the evidence is insufficient to create a fact question. *Carney*, 2016 IL 118984, ¶ 41. The best indicator of whether the employing defendant retained control sufficient to trigger liability under section 414 is the written contract between the employing defendant and the independent contractor. *Id.* However, even if the contract does not provide evidence of retained control, such control may still be demonstrated by evidence of the employing defendant's conduct at variance with the agreement. *Id.*

¶ 41     The plaintiff argues first that the subcontract between the defendant and Lyons, which incorporates the prime contract between the defendant and the Village, contains sufficient evidence that defendant retained control over Lyons' work on the project. The plaintiff then goes on to cite and discuss many provisions of the subcontract and prime contract which, according to the plaintiff, amount to retained control. We need not belabor these provisions at length, as we have reviewed them and agree with the defendant that they do not rise to the level of showing retained control by the defendant over Lyons' work. Most of the provisions cited by the plaintiff are completely inapposite to the issue of retained control. Importantly, no provision appears to address whether the defendant retained control over the aspect of Lyons' work at issue, that being the ability of Lyons' employees to access the areas of the job site where electrical work was to be performed. Instead, the subcontract provisions most closely on point place the responsibility on Lyons to furnish whatever equipment, services, tools, scaffolds, or other facilities were necessary to ensure its work could be fully performed. Specifically, the subcontract obligates Lyons to "furnish all of the *** equipment and services, including, but not limited to, *** tools and

scaffoldings as are necessary for the proper performance of the Subcontractor's Work." It also obligates Lyons to "furnish all temporary services and/or facilities necessary to perform its work." It provides that Lyons' employees may not use the defendant's equipment without express written permission from a representative of the defendant. Nothing about these provisions shows that the defendant retained control over Lyons' work or that it was not free to do the work in its own way.

¶ 42     The plaintiff cites contract provisions requiring the defendant to conform to the standards of OSHA, requiring compliance by Lyons with the defendant's safety program, and requiring Lyons' involvement in a pre-activity meeting to identify issues such as safety procedures and scaffolding. However, the plaintiff cites no evidence concerning the defendant's safety program or what the defendant discussed at any pre-activity meeting. In any event, contract provisions requiring compliance with OSHA regulations do not create a duty of care under section 414, and the existence of a safety program, safety manual, or safety director also does not constitute retained control. *Lee v. Six Flags Theme Parks, Inc.*, 2014 IL App (1st) 130771, ¶ 77; *Madden*, 395 Ill. App. 3d at 382. The plaintiff also cites provisions pertaining to the defendant's coordination of Lyons' work with that of the other subcontractors and requiring Lyons to follow the defendant's instructions, orders, and directions. However, our review of these provisions again indicates that they involve only "general rights reserved to someone, like defendant, who employs a contractor, rather than evidence that defendant retained control over the manner in which work by [Lyons] was performed." *Carney*, 2016 IL 118984, ¶ 46. Accordingly, we find no evidence of retained control within the contracts.

¶ 43     The plaintiff also argues that, apart from the contract language, the defendant's retained control over the work of its subcontractors can be shown by the defendant's conduct on the jobsite. Specifically, the plaintiff argues, the defendant's conduct shows that it was responsible for safe

access on the jobsite, particularly across the dam gate. First, the plaintiff cites evidence that the defendant had constructed a wooden handrail to assist workers on the site with negotiating the steep slope of the gravel ramp running from the road above to the platform where the dam gate was located. Second, the plaintiff cites the fact that, on the day after the plaintiff's fall, the defendant's carpenters constructed a wooden platform over the dam gate. McLaughlin testified that he thereafter used the platform to cross the gate, but he could not recall if the defendant had told him that he could use it.

¶ 44     Even assuming that the defendant's post-occurrence construction of the platform is admissible evidence, we find that the defendant's conduct on which the plaintiff relies is insufficient to demonstrate that it "retained control" of independent contractors' work. We see no evidence of any conduct by the defendant that prevented the Lyons employees from being entirely free to do the work on their own way. This includes accessing the south side of the platform. The evidence indicates that the defendant retained no control over how the Lyons' electricians reached the south side of the platform, and instead it placed all responsibility for accessing it on Lyons. Although we find that this hands-off approach by the defendant is part of what made an injury like the plaintiff's reasonably foreseeable, it does not demonstrate retained control for purposes of section 414. Accordingly, the trial court properly determined that the defendant did not owe a duty of care under section 414 of the Restatement (Second) of Torts.

¶ 45                                B. Proximate causation

¶ 46     The trial court also found no evidence of proximate cause between any alleged negligence by the defendant and the injuries suffered by the plaintiff. It found that the gate was a "condition" rather than the "cause" of the incident in which the plaintiff was injured, with the cause being "his decision to create and implement his ladder set-up idea to transfer himself to and from side to side

of the dam gate." The court also found no evidence of foreseeability to satisfy the "legal cause" aspect of proximate cause.

¶ 47    The plaintiff argues that the trial court erred in its analysis and conclusion. The plaintiff argues that the analysis of whether a defendant's alleged negligence is a "condition" and not a "cause" of a plaintiff's injury is inapplicable because this case does not involve evidence of an intervening act by a third party. The plaintiff also argues that his conduct in using ladders to cross the dam gate was foreseeable to the defendant and that the extent to which he was at fault for causing his own injuries is a question of fact about which reasonable minds could differ.

¶ 48    It is a fundamental principle of law that an injury may have more than one proximate cause. *Espinoza v. Elgin, Joliet & Eastern Ry. Co.*, 165 Ill. 2d 107, 118 (1995). A defendant is liable for its negligent conduct whether it contributed in whole or in part to the plaintiff's injury, as long as proximate cause exists. *Guo v. Kamal*, 2020 IL App (1st) 190090, ¶ 23. To establish proximate cause, the defendant's conduct must be shown to be an actual cause of the plaintiff's injury, as well as a legal cause of it. *Simmons v. Garces*, 198 Ill. 2d 541, 558 (2002). Actual cause (also referred to as cause in fact) is established where "there is a reasonable certainty that a defendant's acts caused the injury or damage." *Id.* (quoting *Lee v. Chicago Transit Authority*, 152 Ill. 2d 432, 455 (1992)). A defendant's conduct is a cause in fact of the plaintiff's injury only if that conduct is a material element and a substantial factor in bringing about the injury. *First Springfield Bank & Trust v. Galman*, 188 Ill. 2d 252, 258 (1999) (citing *Lee*, 152 Ill. 2d at 455). A defendant's conduct is a material element and a substantial factor in bringing about an injury if, absent that conduct, the injury would not have occurred. *Id.* Legal cause, by contrast, involves an assessment of foreseeability. *Steed v. Rezin Orthopedics & Sports Medicine, S.C.*, 2021 IL 125150, ¶ 37. Legal cause is established where the injury is the type of injury that a reasonable person would see as a

"likely result" of his conduct and is not established where the injury is so "highly extraordinary" that imposing liability is not justified. *Id.* Proximate cause is generally a question of fact, but its absence may be determined as a matter of law where the evidence fails to sufficiently demonstrate both cause in fact and legal cause. *Young v. Bryco Arms*, 213 Ill. 2d 433, 447 (2004).

¶ 49 As the trial court's ruling indicates, courts analyzing proximate cause have also used the vocabulary of asking "whether the defendant's conduct was a *cause* of the injury or simply furnished a *condition* by which the injury was made possible." (Emphases added). See *Galman*, 188 Ill. 2d at 259. In *Galman*, the supreme court clarified that an inquiry using these terms is "in effect asking whether the defendant's conduct was a material and substantial element in bringing about the injury." *Id.* Thus, the trial court's ruling was effectively a finding that the dam gate was not a material and substantial element in bringing about the plaintiff's injury. We agree with the plaintiff that the trial court erred in this ruling. Reasonable minds could differ about whether the plaintiff's injuries would have occurred absent the gate being in place with no means of access to the south side of the platform, as the plaintiff would have had no reason to use ladders to reach the area where he needed to work. By determining that the sole cause of the plaintiff's injury was his own conduct in using ladders to cross the gate, the trial court essentially resolved a disputed issue of fact. As stated above, an injury may have more than one proximate cause, and whether the defendant's negligence was a proximate cause of the plaintiff's injury here is a question for the trier of fact. Accordingly, the trial court erred in its analysis of actual cause.

¶ 50 We also find that legal cause is present in this case. Our discussion on duty above illustrates that the plaintiff was the type of person to whom the defendant should reasonably have foreseen injury, *i.e.*, a worker injured attempting to cross the dam gate using ladders. We similarly find that the injuries the plaintiff apparently suffered are a likely result of falling while attempting to cross

the gate and thus also foreseeable as a result of the defendant's conduct. Nothing about the concussion and orthopedic-type injuries apparently suffered by the plaintiff is so "highly extraordinary" that imposing liability would be unjustified.

¶ 51 We reject the defendant's comparison of this case to *Cannon v. Commonwealth Edison Co.*, 250 Ill. App. 3d 379 (1993). There, the plaintiff was seriously injured during a power outage when he fell while descending stairs to his basement in an attempt to ascertain the cause of the loss of power to his home. *Id.* at 380. He then sued Commonwealth Edison, alleging that its failure to maintain its equipment was a proximate cause of his injuries. *Id.* at 380-81. This court affirmed dismissal of the plaintiff's complaint on the grounds that no facts could be established showing proximate cause. The court found that it would impose an "insuperable burden" on Commonwealth Edison to "foresee every accident that may arise every time electric power is lost," as no amount of foresight would have permitted it to take reasonable steps to prevent what occurred in that case. *Id.* at 385. It held as a matter of law that the blackout occasioned by the defendant's conduct was condition that made the plaintiff's fall possible, but it was not a proximate cause where the plaintiff's own actions of walking down the stairs served as a superseding cause. *Id.*

¶ 52 *Cannon* is simply inapposite. In *Cannon*, the plaintiff's injuries from falling down the stairs during a power outage bore only a tenuous connection to Commonwealth Edison's alleged negligence in failing to maintain its equipment. In this case, the connection between the defendant's alleged negligence and the plaintiff's injuries is far closer. Thus, unlike in *Cannon*, we cannot say as a matter of law that the plaintiff's injury was unforeseeable or that the that dam was a condition and not a proximate cause of the plaintiff's injury. A genuine issue of material fact exists as to proximate causation in this case, and we therefore reverse the trial court's ruling on the element of proximate cause.

¶ 53                                        III. CONCLUSION

¶ 54        For the foregoing reasons, we reverse the trial court's granting of summary judgment in favor

of the defendant and remand the cause for further proceedings.

¶ 55        Reversed and remanded.